UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENDERS OF WILDLIFE                    )
1130 Seventeenth Street, N.W.            )
Washington, D.C. 20036,                  )
                                         )
THE HUMANE SOCIETY OF THE                )
UNITED STATES                            )
2100 L Street, N.W.                      )
Washington, D.C. 20037,                  )
                                         )
and                                      )
                                         )
THE OCEAN CONSERVANCY                    )
2029 K Street, N.W.                      )
Washington, D.C. 20006,                  )
                                         )
            Plaintiffs,                  )
                                         )
    v.                                   )
                                         )
CARLOS GUTIERREZ, Secretary,             )
Department of Commerce                   )
14th Street and                          )
Constitution Ave., N.W.                  )
Washington, D.C. 20230,                  )
                                         )
and                                      )
                                         )
WILLIAM T. HOGARTH,                      )
Assistant Administrator                  )
for Fisheries                            )
National Marines Fisheries Service )
1335 East-West Highway                   )
Silver Spring, MD 20910.                 )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.    This suit challenges the Department of Commerce and

National Oceanic and Atmospheric Administration's ("NOAA

Fisheries") refusal to take immediate steps to protect the

critically imperiled North Atlantic right whale from collisions

with marine vessels.  Although NOAA Fisheries has recognized that

ship strikes are one of the "two most significant . . . sources

of mortality to right whales," 70 Fed Reg. 36,121 (2005), and
that, in view of the species' depleted population, "the loss of
even <u>a single individual</u> may contribute to the extinction of the
species," 69 Fed. Reg. 30,857, 30,858(2004) (emphasis added), on
September 29, 2005 NOAA Fisheries denied plaintiffs' Rulemaking
Petition for emergency regulations requiring reduced speeds for,
or the rerouting of, marine vessels in right whale habitat.

2.    In light of defendants' own recognition that additional
regulations are urgently needed to protect the species, and the
agency's mandate to protect this species under the Marine Mammal
Protection Act ("MMPA"), 16 U.S.C. § 1361, <u>et</u> <u>seq</u>., and the
Endangered Species Act ("ESA"), 16 U.S.C. § 1531, <u>et</u> <u>seq</u>., NOAA
Fisheries' denial of the Rulemaking Petition should be set aside
as "arbitrary, capricious, an abuse of discretion, or otherwise
not in accordance with law," in violation of the Administrative
Procedure Act ("APA").  5 U.S.C. § 706.

**JURISDICTION**

3.    This Court has jurisdiction over this action pursuant
to 28 U.S.C. § 1331.

**PARTIES**

**A.**    **Plaintiffs**

4.    Plaintiff Defenders of Wildlife ("Defenders") is a
national nonprofit organization with more than 500,000 members
and supporters across the nation.  Defenders is dedicated to the

2

protection and restoration of all native wild animals and plants in their natural communities.  Defenders is involved in numerous projects to further the protection of the North Atlantic right whale.

5.    Defenders brings this action on behalf of its members, some of whom enjoy observing, photographing and appreciating North Atlantic right whales in the wild, and studying the species in its natural habitat.  The interests of Defenders' members in observing, studying and otherwise enjoying the North Atlantic right whale and its habitat are harmed by the defendants' denial of plaintiffs' Rulemaking Petition, because the refusal to adopt the necessary regulations to address ship strikes is contributing to the depletion and eventual extinction of the species.

6.    Plaintiff The Humane Society of the United States ("HSUS") is a national animal protection organization with more than nine million members and constituents.  The HSUS is dedicated to protecting wild and domestic animals by actively opposing those projects, plans, and events which result in the cruel or inhumane treatment of animals. The HSUS is involved in numerous projects to further the protection of the North Atlantic right whale.

7.    The HSUS brings this action on behalf of its members, some of whom enjoy observing, photographing and appreciating North Atlantic right whales in the wild, and studying the species

in its natural habitat.  The interests of HSUS's members in
observing, studying and otherwise enjoying the North Atlantic
right whale and its habitat are harmed by the defendants' denial
of plaintiffs' rulemaking petition, because the refusal to adopt
the necessary regulations to address ship strikes is contributing
to the depletion and eventual extinction of the species.

        8.    Plaintiff The Ocean Conservancy is a non-profit
science-based environmental advocacy organization with over
150,000 members.  The Ocean Conservancy is dedicated to
protecting marine wildlife species, including right whales and
their habitats, and to conserving coastal and ocean resources.
To further its goals, The Ocean Conservancy conducts policy-
oriented research, promotes public awareness, education, and
citizen involvement in the conservation of marine wildlife and
their habitats, and supports domestic and international programs
for the protection of these resources.  The Ocean Conservancy is
involved in numerous projects to further protection of the North
Atlantic right whale.

        9.    The Ocean Conservancy brings this suit on behalf of its
members, some of whom enjoy observing, photographing and
appreciating North Atlantic right whales in the wild, and
studying the species in its natural habitat.  The interests of
The Ocean Conservancy's members in studying and otherwise
enjoying the North Atlantic right whale and its habitat are

harmed by the defendants' denial of plaintiffs' Rulemaking
Petition, because the refusal to adopt emergency regulations to
address ship strikes is contributing to the depletion and
eventual extinction of the species.

**B.    <u>Defendants</u>**

10.    Defendant Carlos Gutierrez is the Secretary of
Commerce, and has ultimate responsibility for the programs of
NOAA Fisheries.

11.    Defendant William T. Hogarth is the Assistant
Administrator for Fisheries at NOAA Fisheries, the agency within
the Department of Commerce which has been delegated the
responsibility for implementing the MMPA and the ESA's provisions
for species such as the North Atlantic right whale.

**STATUTORY FRAMEWORK AND FACTS GIVING
RISE TO PLAINTIFFS' CAUSES OF ACTION**

**A.    <u>Statutory and Regulatory Framework</u>**

    **1.    <u>The Endangered Species Act</u>**

12.    Reflecting an "explicit congressional decision to
afford first priority to the declared national policy of saving
endangered species," the ESA is "the most comprehensive
legislation for the preservation of endangered species ever
enacted by any nation."  <u>Tennessee Valley Auth. v. Hill</u>, 437
U.S. 153, 180, 185 (1978).  Recognizing that certain species of
plants and animals "have been so depleted in numbers that they
are in danger of or threatened with extinction,"  16 U.S.C.

5

§ 1531(a)(2), Congress enacted the statute to provide both "a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] a program for the conservation of such endangered species and threatened species . . . ." Id. at § 1531(b). The principal duties the Act imposes upon the Secretary of Commerce for marine species such as the North Atlantic right whale have been delegated to NOAA Fisheries. 50 C.F.R. § 222.101(a).

13. Under the ESA, a species is listed as "endangered" where it is "in danger of extinction throughout all or a significant portion of its range ...." Id. at § 1532(6). The right whale has been listed an endangered species since the ESA was originally enacted.

14. Once listed, a species is entitled to a number of protections. Foremost among these protections are the broad prohibitions of Section 9 of the Act. 16 U.S.C. § 1538(a). Pursuant to this provision, it is illegal for anyone to "take" an endangered species within the United States or the territorial sea of the United States, or upon the high seas, without a permit. Id.; 50 C.F.R. §§ 17.21. The term "take" includes to "harass, harm, pursue . . . wound, kill [or] to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

15. The Act authorizes enforcement for violations of these prohibitions, including authorizing NOAA Fisheries to promulgate

particular regulations to protect against the take of listed species.  16 U.S.C. § 1540(f).  The statute also requires that NOAA Fisheries take affirmative steps to protect and recover listed species, including that the Service formally designate and protect "critical habitat" for listed species, <u>id</u>. at § 1533(a)(3), and "develop and implement plans . . . for the conservation and survival of listed species."  <u>Id.</u> at § 1533(f)(1).

16.  Section 7 of the Act requires NOAA Fisheries to review the programs it administers and utilize them in furtherance of the purposes of the ESA.  16 U.S.C. § 1536(a)(1).  Section 7 also imposes upon all other Federal agencies, in consultation with NOAA Fisheries, the duties to both "utilize their authorities" to "carry[ ] out programs for the conservation of endangered species," <u>id.</u>, and to "insure that any action[s] authorized, funded, or carried out" by such agencies are "not likely to jeopardize the continued existence of any endangered species [or] result in the destruction or adverse modification" of such species' designated critical habitat.  <u>Id.</u> at § 1536(a)(2).

## 2.  __The Marine Mammal Protection Act__

17.  Recognizing that "certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities," Congress passed the MMPA in 1972 to insure that they are "protected and encouraged to

develop to the greatest extent feasible . . . to maintain the health and stability of the marine ecosystem." 16 U.S.C. § 1361. The principal responsibilities that the Act imposes on the Secretary of Commerce are carried out by NOAA Fisheries.

18. The MMPA provides several protections for marine mammals. The statute prohibits the unauthorized "take" of all marine mammals, including the North Atlantic right whale. 16 U.S.C. §§ 1372(a). To "take" under the MMPA includes to "harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill, any marine mammal." Id. at § 1362(13).

19. Among other authorities, in order to protect marine mammals from "take," the MMPA authorizes NOAA Fisheries to "prescribe such regulations as are necessary and appropriate to carry out the purposes of this subchapter." Id. § 1382(a).

B.  **Relevant Facts**

1.  **The North Atlantic Right Whale**

20. The North Atlantic right whale (Eubalaena glacialis) is one of the rarest of the large whales worldwide. Once prized for its baleen and oils, the right whale received its ironic name because early whalers found these slow moving leviathans the "right" whale to hunt. Over a thousand years of commercial whaling nearly drove the species to extinction by the early twentieth century.

21.    Adult right whales typically measure between forty-five and fifty-five feet, and can weigh over seventy tons.  Right whales, which are generally black, are known for their stocky body, lack of a dorsal fin, large head, and broad, deeply notched tail with a smooth trailing edge.  The right whale primarily feeds on zooplanktons, often by skimming along the surface of water with its mouth open, filtering prey through its baleen.

22.    The North Atlantic right whale is comprised of two separate populations.  The western population, which inhabits the waters off the East coast of the United States and Canada, today contains approximately three hundred individuals.  The eastern population, which was once found from the coast of northern Europe to the northwest coast of Africa, is already nearly, if not completely, extinct.

23.    North Atlantic right whales are most often found in coastal or shelf waters, although movements over much deeper waters have been documented.  In the western North Atlantic, right whales migrate to higher latitudes during spring and summer, with the majority returning to summer feeding and nursery grounds in New England waters, including the Great South Channel to the east of Cape Cod, Massachusetts and Cape Cod Bay, and north to the Bay of Fundy and Scotian Shelf.  It is unknown where much of the population spends the winter, although a portion moves to calving grounds off the coast of Georgia and Florida.

24.   In its 2003 Stock Assessment, NOAA Fisheries' estimated
that there are fewer than 300 North Atlantic right whales
remaining, and concluded that the population is declining.
Recently published estimates by well-recognized scientists
studying right whales indicate that the average number of whales
dying each year is likely around 14 animals, which includes those
dead whales which are not found.  This represents an annual four
percent population loss.  Because it takes female right whales
nine to ten years to reach reproductive maturity and they give
birth to only one calf approximately every four years, these
losses have led to a marked decrease in the reproductive capacity
of the population.  As a result, the population is unable to
reproduce fast enough to offset annual losses, and the overall
population is declining by about two percent annually.

25.  Given these statistics and trends, NOAA Fisheries
explained in its recent Right Whale Recovery Plan that "[t]here
is reason for serious concern about the future of North Atlantic
right whales."  As NOAA Fisheries has stated elsewhere, "[g]iven
its very small population size, limited distribution, and low
reproductive rate, any loss of a right whale is expected to
affect the species survival and recovery by further limiting
numbers, distribution and ability to reproduce."

**2.    The Inadequacy Of Existing Regulations To Protect Right Whales From Ship Strikes**

26.    The right whale has been protected as an "endangered" species for over thirty-five years – listed as "endangered" first under the Endangered Species Conservation Act in June 1970, <u>see</u> 35 Fed. Reg. 8495 (Jun. 2, 1970), and subsequently under the ESA. <u>See</u> 50 C.F.R. § 17.11.  The right whale is also designated as "depleted" under the MMPA.

27.    NOAA Fisheries has designated "critical habitat" – <u>i.e.,</u> habitat that is "essential to the conservation of the species," <u>id.</u> § 1532(5)(A)(i) – for the North Atlantic right whale in three areas: 1) coastal Florida and Georgia (Sebastian Inlet, Florida to the Altamaha River, Georgia); 2) the Great South Channel (east of Cape Cod); and 3) Massachusetts Bay and Cape Cod Bay.  59 Fed. Reg. 28793 (Jun. 3, 1994); codified at 50 C.F.R. § 226.203.

28.    As required by ESA Section 4(f), 16 U.S.C. § 1333(f), NOAA Fisheries has also issued a Recovery Plan for the Right Whale, which sets forth general steps that must be taken to insure the species' survival and recovery.

29.    Despite these measures, the North Atlantic right whale has been declining, largely due to injuries and mortalities from ship strikes and entanglement in fishing gear.  As NOAA Fisheries explained in its Recovery Plan, "[t]he greatest known current cause of right whale mortality in the western North Atlantic is

11

collision with ships." Of all known right whale deaths since 1986, over thirty-five percent have been due to ship strikes.

30. Right whales regularly inhabit waters traversed by thousands of ships making hundreds of thousands of port calls in the United States annually. As a result, while several factors – including the species' feeding, resting, and socializing behaviors – appear to make right whales particularly vulnerable to ship strikes, the high density of shipping traffic in right whale habitat significantly increases the threat to the species.

31. In an effort to address this problem, NOAA Fisheries developed a "ship strike reduction program" that provides information to ships regarding whale sighting locations, and relies on the shippers to voluntarily use that information to avoid striking whales. In addition, in August 2001 the Northeast and Southeast Implementation Teams for the Recovery of the North Atlantic Right Whale submitted a Report to NOAA Fisheries, entitled "Recommended Measures to Reduce Ship Strikes of North Atlantic Right Whales," which recommended specific mandatory measures to address this ongoing problem.

32. NOAA Fisheries took no action to adopt this Report's recommendations as binding regulations. In the meantime, despite ongoing voluntary measures, ship strikes have continued, and have become more frequent. Since January 2004, there have been at least nine recorded North Atlantic right whale deaths. Of these

nine, at least three have been killed by ship strikes, and a
fourth by entanglement in commercial fishing gear.

33.   These losses are particularly devastating because at
least six of these whales were reproductively-mature females, and
three of them were pregnant and carrying near-term female calves
at the time of their death.  The loss of this many reproductive
females in such a short period of time is unprecedented in the
last quarter century.  There were also several additional
reported right whale injuries due to ship strikes during this
same period.

34.   Recognizing that further regulations are necessary to
stem the ongoing killing of North Atlantic right whales, in June
2004 – almost a year-and-a-half ago – NOAA Fisheries published an
Advance Notice Of Proposed Rulemaking ("ANPR") for Right Whale
Ship Strike Reduction, finally beginning the regulatory process
to adopt the recommendations contained in the August 2001 Report.
69 Fed. Reg. 30,857 (2004).  In the ANPR, NOAA Fisheries
acknowledged the urgency for additional regulations, noting that
present population models indicate that the loss of "even a
single individual" whale may be critical to whether the species
can avoid extinction.  To address this admitted crisis, NOAA
Fisheries stated that it intended to adopt regulations to
designate routes, and/or impose speed restrictions, in areas
frequented by right whales in order to reduce ship strikes.

13

### 3.    Plaintiffs' Petition For Emergency Rule-Making

35.  Despite the agency's recognition that new regulations are urgently needed, almost a year later NOAA Fisheries had not proposed specific rules for public comment or taken any further regulatory action.  In light of this failure to act, in May 2005, plaintiffs and other groups submitted a formal Rulemaking Petition to NOAA Fisheries seeking emergency regulations to reduce the risk of ship strikes.

36.  Petitioners requested, pursuant to 5 U.S.C. § 553(e), that the Department of Commerce, through NOAA Fisheries, act immediately, under the ESA and the MMPA, to implement emergency regulations to protect this critically endangered species. Relying heavily on the measures NOAA Fisheries itself has already recognized are necessary, petitioners described precisely what these regulations must include.

37.  Specifically, petitioners requested that emergency regulations be implemented "to slow and/or re-route vessels within right whale habitat, as a means of protecting the species until such time as permanent measures can be enacted."  The Petition requested that "[s]uch emergency regulations should require all ships entering and leaving all major East Coast ports to travel at speeds of twelve knots or less within twenty-five nautical miles of port entrances during expected right whale high use periods."

14

38.   In light of the specific time period when right whales are likely to be found in particular areas, the Petition requested that these measures should be in place between November 1st and April 30th for all ports from Florida north to Rhode Island; between January 1st and May 31st in the area of Cape Cod Bay; and between January 1st and July 31st in the area of the Great South Channel.  The Petition also requested that, "given the high seasonal right whale aggregation in the area, similar speed restrictions should be placed on all ships traveling in the Boston Traffic Separation Scheme" between January 1st and July 31st, and that "all vessels traveling within right whale critical habitat during the seasonal high use times should be required to proceed at twelve knots or slower, or avoid the area altogether."

39.   Finally, the Petition requested that NOAA Fisheries "institute dynamic management areas to protect whales outside of the times and areas described above.[]  This dynamic management system should require the re-routing of vessels and/or operation at speeds of twelve knots or slower, when aggregations of whales are found in areas where other protective measures are not in place."

####    4.    __NOAA Fisheries' Denial of The Rulemaking Petition__

40.    A month after receiving the Rulemaking Petition, in
June 2005, NOAA Fisheries published a Notice of Intent to prepare
an Environmental Impact Statement ("EIS"), pursuant to the
National Environmental Policy Act ("NEPA") 42 U.S.C. § 4321, <u>et
seq.</u>, concerning potential ship strike regulations.  70 Fed. Reg.
36,121 (2005).  Although NOAA Fisheries once again recognized
that "the loss of even an individual animal has measurable
effects that may contribute to the extinction of the species,"
<u>id.</u>, the agency explained that it intends to prepare a full-blown
EIS before implementing any further ship strike avoidance
requirements – a process that typically takes agencies several
years to complete.  The NOI contained no timetable for either
completion of the EIS, or for implementing regulations.

41.    On September 29, 2005, NOAA Fisheries formally denied
plaintiffs' Rulemaking Petition.  70 Fed. Reg. 56,884 (2005).  In
its denial Notice, NOAA Fisheries neither disagreed that
regulations to curtail ship strikes are urgently needed, nor that
the specific regulations requested in the Petition would be both
effective and appropriate to address the problem in the short-
term.  Instead of addressing the merits of the Petition, NOAA
Fisheries claimed that it was denying the Petition because
emergency regulations would "duplicate agency efforts" being
devoted to permanent regulations to be adopted once the EIS is

complete, and because the agency is "enhancing its non-regulatory [i.e., voluntary] measures to reduce ship strikes."

42. The denial Notice set forth no evidence to suggest that "enhanced" voluntary measures would be any more successful in addressing the ship strike crisis than past measures. The Notice also failed to explain why emergency regulations could not be put in place far more rapidly than permanent regulations, thus reducing the risks of ship strikes while permanent regulations are being developed.

43. Although, in a separate letter to plaintiffs responding to the Petition, NOAA Fisheries had stated that the agency expects to issue a Draft EIS, and proposed implementing regulations, by early 2006, the Federal Register Notice formally denying the Petition omitted any reference to this or any other timetable for completing the rulemaking process. Even the letter to plaintiffs, which was sent on September 14, 2005, gave no indication when regulations would be adopted in final form.

44. On information and belief, NOAA Fisheries has no firm and expeditious timetable for the adoption of ship strike regulations to protect the critically imperiled North Atlantic right whale from extinction due to collisions with marine vessels.

17

## PLAINTIFFS' CLAIM FOR RELIEF

45.  By acknowledging the urgent need for regulations to protect North Atlantic right whales from ship strikes, but failing either to grant the petition for emergency regulations or to adopt a firm and expeditious timetable for the promulgation of permanent regulations, NOAA Fisheries' denial of plaintiff's Rulemaking Petition is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the APA.  5 U.S.C. § 706(2)(a).

46.  These legal violations are injuring plaintiffs in the manner described in paragraphs 4-9 above.

Wherefore, plaintiffs respectfully request that this Court:

(1) declare that defendants have violated the APA;

(2) set aside and remand defendants' September 29, 2005 denial of plaintiffs' Rulemaking Petition to NOAA Fisheries, with directions to make a new decision on the Rulemaking Petition in accordance with the Court's ruling within thirty (30) days;

(3)  direct that, should NOAA Fisheries grant the Petition, the agency shall issue emergency regulations to protect North Atlantic right whales from ship strikes within sixty (60) days;

(4)  award plaintiffs their costs, attorneys' fees, and other disbursements for this action, including any expert witness fees; and

18

(5) grant plaintiffs such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Howard M. Crystal (D.C. Bar No. 446189)

Eric R. Glitzenstein (D.C. Bar No. 358287)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C.  20009
(202) 588-5206

Of Counsel:

Michael P. Senatore (D.C. Bar No. 453116)
Andrew Hawley (Cal. Bar No. 229274)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C.  20036

Attorneys for Plaintiffs

November 9, 2005