UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, THE HUMANE ) <br> SOCIETY OF THE UNITED STATES, and ) <br> THE OCEAN CONSERVANCY ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CARLOS GUTIERREZ, in his official capacity ) <br> as Secretary of the Department of Commerce, and ) <br> WILLIAM T. HOGARTH, in his official capacity ) <br> as Assistant Administrator for Fisheries, National ) <br> Marine Fisheries Service ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:05CV02191 |

**OPPOSITION TO PLAINTIFFS' MOTION TO FILE AMENDED COMPLAINT**

Federal Defendants, Carlos Gutierrez, in his official capacity as Secretary of the Department of Commerce, and William T. Hogarth, in his official capacity as the Assistant Administrator for Fisheries of the National Marine Fisheries Service, (hereafter collectively referred to as "NMFS"), hereby oppose Plaintiffs' motion to file an amended complaint in the above-captioned case.

**STANDARD OF REVIEW**

A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend "shall be freely given when justice so requires." Such leave, however, is not "automatic." Fair Employment Council of Greater Wash. v. BMC Mktg Corp., 28 F.3d 1268, 1275 (D.C. Cir. 1994). Leave to amend is appropriate "in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing Foman v.

Davis, 371 U.S. 178, 182 (1962)).  The decision to grant or deny a motion to amend rests within the sound discretion of the district court, and is reviewed for abuse of discretion, Kowal v. MCI Communications Corp., 16 F.3d 1271, 1279 (D.C. Cir.1994), requiring only that the court base its ruling on a valid ground, National Treasury Employees Union v. Helfer, 53 F.3d 1289, 1295 (D.C.Cir.1995).

Courts may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss. James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  See also Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2nd Cir. 1991); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000; Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872 (5th Cir. 2000); Gen. Elec. Capital Corp. v. Lease Resolution Corp.,128 F.3d 1074, 1085 (7th Cir. 1997); Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991); Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1041-42 (11th Cir. 1986).

## ARGUMENT

**I.     Permitting Amendment of the Current Claim Against NMFS Would Be Futile.**

NMFS opposes amendment of the current complaint, as this Court would lack jurisdiction over Plaintiffs' proposed Endangered Species Act ("ESA") Section 7(a)(1) claim.  To the extent that Plaintiffs' proposed amendment would add a claim pursuant to the Marine Mammal Protection Act ("MMPA"),[1] this Court would lack jurisdiction over such a claim

---

[1] It is not clear from the language of Plaintiffs' Complaint whether they attempt to bring an action directly under the MMPA, or attempt to bring an APA Section 706(2)(A) claim for agency action not in accordance with law, with the MMPA as the framework law.  Either way, there is no jurisdiction over such a claim in this instance.

because there is no private right of action under that statute, and no jurisdiction for their claim under the Administrative Procedure Act ("APA").  Accordingly, allowing amendment of Plaintiffs' complaint to add these additional claims against NMFS would be futile and should not be permitted.

      A.    <u>This Court Would Lack Jurisdiction Over Plaintiffs' Proposed MMPA Claim</u>.

Plaintiffs' proposed amendment to their current claim against NMFS alleges that NMFS is in violation of MMPA Section 1382(a), which reads "The Secretary, in consultation with any other Federal agency to the extent that such agency may be affected, shall prescribe such regulations as are necessary and appropriate to carry out the purposes of this subchapter." 16 U.S.C. § 1382(a).  The MMPA does not authorize citizen suits.  <u>Didrickson v. U.S. Dep't of Interior</u>, 982 F.2d 1332, 1338 (9th Cir.1992); <u>Animal Legal Defense Fund v. Yeutter</u>, 760 F. Supp. 923, 926 (D.D.C.1991) *vacated on other grounds*, 23 F.3d 496 (D.C.Cir. 1994).  Accordingly, citizens challenging actions taken under the MMPA can only seek judicial review under APA Section 704, 5 U.S.C. § 704.  <u>Hawaii County Green Party v. Clinton</u>, 124 F. Supp. 2d 1173, 1195 (D. Hawaii 2000) (holding that final agency action under the APA is required for judicial review of alleged violation of the MMPA).  However, here Plaintiffs are attempting to challenge an alleged failure to engage in discretionary rulemaking, which is not reviewable under the APA.

Final agency action marks the consummation of an agency's decisionmaking process. <u>Bennett v. Spear</u>, 520 U.S. 154, 177-78 (1997) (holding that two conditions must be satisfied for agency action to be considered final: (1) the action marks the consummation of the agency's decisionmaking process; and (2) the action is the sort from which rights and obligations are

determined or legal consequences flow). The only final agency action taken with respect to the effect of ship strikes on North Atlantic right whales is NMFS' finding on Plaintiffs' petition for emergency rulemaking, which Plaintiffs have currently challenged under the APA.

Any other proposed "failure to act" claim based on the MMPA is not reviewable under the APA because there is no action that NMFS was required to take. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004). Indeed, Plaintiffs admit that the agency is currently in the process of developing permanent regulations to address the ship strike issue. See Pls.' Compl., ¶ 41 (NMFS denied Plaintiffs' petition because emergency regulations would duplicate agency efforts being devoted to permanent regulations). "[A]n agency's pronouncement of its intent to defer or to engage in future rulemaking generally does not constitute final agency action reviewable by this court. In re Bluewater Network, 234 F.3d 1305, 1313 (D.C. Cir. 2000) (citing Am. Portland Cement Alliance v. EPA, 101 F.3d 772, 777 (D.C.Cir.1996); Fla. Power & Light Co. v. EPA, 145 F.3d 1414, 1418 (D.C. Cir. 1998)). Accordingly, to the extent that Plaintiffs propose to add a separate claim of action against NMFS, based on a failure to prescribe regulations pursuant to the MMPA, there is no subject-matter jurisdiction for the Court to hear such a claim and amendment would be futile.

B.     This Court Would Lack Jurisdiction Over Plaintiffs' Section 7(a)(1) Claim.

Plaintiffs also seek to amend their claim against NMFS to allege that NMFS is violating ESA Section 7(a)(1). Compare Compl., ¶¶ 45-46 with Proposed Amended Compl., ¶¶ 76-78. Plaintiffs' allegations with respect to ESA Section 7(a)(1) fail to recognize both the limits of the statutory provision, and the broad discretion afforded federal agencies in determining how best to fulfill the obligations of Section 7(a)(1). As an initial matter, by its terms, Section 7(a)(1)

does not apply to NMFS' implementation of the ESA. Even if it were to apply here, Section 7(a)(1) requires only that federal agencies engage in conservation "programs" to conserve endangered and threatened species. Because the scope and subject of this suit concerns a specific action (request for further regulations concerning North Atlantic right whales), a programmatic challenge is inappropriate and cannot stand. Although the ESA does not require species-specific conservation efforts, it cannot be disputed that NMFS fulfills its 7(a)(1) obligation to have programs to conserve endangered and threatened species, either for the North Atlantic right whale or endangered species generally. Finally, neither the statute, its accompanying regulations, nor cases interpreting those provisions – mandate the execution of specific 7(a)(1) actions in furtherance of the ESA's conservation goals. Instead, case law is unequivocal that the government agencies retain discretion in determining how they shall comply with their 7(a)(1) obligations. As such, this Court cannot allow Plaintiffs to amend their complaint to add the ESA Section 7(a)(1) because it lacks subject-matter jurisdiction over such a claim. Finally, even if this Court were to find that such a proposed claim is valid, Plaintiffs have failed to comply with the ESA's sixty-day notice requirement and this Court lacks subject-matter jurisdiction on that basis.

    1.    <u>ESA Section 7(a)(1)</u>.

Section 7(a)(1) of the ESA states that:

> [t]he Secretary shall review other programs administered by him and utilize such programs in furtherance of the purposes of this chapter. All other Federal agencies shall, in consultation with and with the assistance of [FWS or NMFS], utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species[.]

16 U.S.C. § 1536(a)(1). The conservation requirement under 7(a)(1) is often met in tandem and

coordination with a federal agency's formal consultation obligations under 7(a)(2) to ensure that its actions are not likely to jeopardize the continued existence of listed species.

Pursuant to 50 C.F.R. § 402.14(j), when issuing biological opinions under Section 7(a)(2), NMFS may provide a "statement concerning discretionary conservation recommendations" which "are advisory and are not intended to carry any binding legal force." The Services have clarified that the term "conservation recommendations" was introduced into the regulations to explain the consulting agency's "role in helping [action] agencies meet their section 7(a)(1) responsibilities." "Interagency Cooperation - Endangered Species Act of 1973", 51 Fed. Reg. 19926, 19931 (June 3, 1986). Thus, conservation measures are "voluntary measures that the Federal [action] agency has the discretion to undertake to avoid or reduce adverse effects of a proposed action that otherwise complies with the provisions of section 7(a)(2)." Id.; see also 51 Fed. Reg. at 19934 ("the Act does not mandate particular actions be taken by Federal agencies to implement 7(a)(1)").

    2.  ESA Section 7(a)(1) Does Not Apply to NMFS' Administration of the ESA.

The fundamental flaw with Plaintiffs' proposed amendment is that it erroneously suggests that Section 7(a)(1) applies to NMFS' administration of the ESA. A plain reading of the statute reveals precisely the opposite. As set forth above, Section 7(a)(1) provides that "[t]he Secretary shall review **other programs** administered by him and utilize such programs in furtherance of the purposes of this chapter." 16 U.S.C. § 1536(a)(1)(emphasis added). Thus, Section 7(a)(1) imposes no affirmative obligation on NMFS within the context of its implementation of the ESA. This reading of the statute is supported by both logic and common sense. NMFS obviously advances the goals and purposes of Section 7(a)(1) through its

administration of the ESA. Clearly, the reference to other programs administered by the Secretary of Commerce is intended to include other agencies within the Department of Commerce which engage in programs that must comport with the requirements of Section 7(a)(1). Unlike other programs (within the Department of Commerce or within other federal agencies), there can be no dispute that the administration of the Endangered Species Act by NMFS is a program, in and of itself, designed to effectuate the conservation of endangered and species. Thus, the only logical reading of Section 7(a)(1) is to interpret the first sentence as applying to federal programs other than NMFS' administration of the Endangered Species Act. Because Section 7(a)(1) is inapplicable to the situation presented here, Plaintiffs' attempt to amend their complaint to include such a claim would be futile.

Even if this Court found Section 7(a)(1) applicable to NMFS' administration of the ESA, Section 7(a)(1) does not provide any mechanism for applying its very broad goals to particular circumstances involving particular species, and cannot be brought under the APA, which would the basis of Plaintiffs' proposed claim. In fact, courts that have considered the scope of an agency's duty under Section 7(a)(1) have agreed that this Section does not mandate particular agency actions. See e.g., Defenders of Wildlife v. Babbitt, 130 F. Supp. 2d 121, 135 (D.C. Cir. 2001). Thus, it is clear that federal agencies are not required to take particular conservation actions to fulfill their Section 7(a)(1) responsibilities. To hold otherwise would result in a court substituting its judgment for that of the agency in determining how that agency should use its authorities to conserve species under Section 7(a)(1). Nowhere in the statute or in the legislative history is there any indication that Congress intended the courts to determine on their own the optimum mix of agency activities that constitute conservation programs under Section 7(a)(1).

The law is clear that federal action agencies, like NMFS here, are afforded substantial discretion in determining how best to fulfill their Section 7(a)(1) obligations. Pyramid Lake Paiute Tribe v. U.S. Dep't of Navy, 898 F.2d 1410, 1418 (9th Cir. 1990) (citing Carson-Truckee Water Conservation Dist. v. Clark, 741 F.2d 257, 262 (9th Cir. 1984). This discretion is apparent from the face of the statute itself and the ESA's implementing regulations.[2] Pyramid Lake, 898 F.2d at 1418 ("That some discretion should be allowed is also evident from the regulations promulgated under the Act." (citing 50 C.F.R. § 402.14(j)). The Ninth Circuit noted, "[t]he interpretation of a statute by the agency charged with its administration is entitled to deference." Id. at 1418 (citing Chevron, U.S.A. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)).

District courts considering the issue have agreed that a federal agency enjoys substantial discretion in implementing its ESA Section 7(a)(1) responsibilities. See Coalition for Sustainable Res., Inc. v. U.S. Forest Serv., 48 F. Supp. 2d 1303, 1315 (D. Wy. 1999) (case law on this issue is well settled), aff'd in part, vacated on other grounds, 259 F.3d 1244 (10th Cir. 2001); Hawksbill Sea Turtle v. FEMA, 11 F. Supp. 2d 529, 542-43 (D.V.I. 1998) (recognizing federal agency discretion under ESA 7(a)(1)); Strahan v. Linnon, 967 F. Supp. 581, 596 (D. Mass. 1997), aff'd 187 F.3d 623 (1st Cir. 1998) ((holding that conservation plans under Section 7(a)(1) are "'voluntary measures that the federal agency has discretion to undertake'" and that "'the

---

[2]See, 51 Fed. Reg. at 19,934 (final rule establishing procedural regulations governing interagency cooperation under ESA Section 7 and promulgating 50 C.F.R. § 402.14(j)). ("The Service will not, nor does it have the authority to, mandate how or when other Federal agencies are to implement their responsibilities under section 7(a)(1) . . . . Section 7(a)(1) has a limited purpose under the Act: to authorize Federal agencies to factor endangered species conservation into their planning processes, regardless of other statutory directives. . . . [T]he Act does not mandate particular actions to be taken by Federal agencies to implement 7(a)(1)") (emphasis added).

[ESA] does not mandate particular actions be taken by Federal Agencies to implement [section] 7(a)(1).'") (quoting 51 Fed. Reg. 19926, 19931, 19934); Ctr. for Marine Conservation v. Brown, 917 F. Supp. 1128, 1150 (S.D. Tex. 1996) (same); Defenders of Wildlife v. Administrator, EPA, 688 F. Supp. 1334, 1352 (D. Minn. 1988), aff'd in part and rev'd in part on other grounds, 882 F.2d 1294 (8th Cir. 1989) (same) ("Reasonable people could disagree as to the proper level of activism required by an agency under the ESA. The court will not substitute its judgment for the agency's in deciding as a general matter that the totality of defendant's actions taken to protect threatened and endangered species were insufficient.")

In Coalition for Sustainable Resources, the plaintiffs actually suggested conservation mechanisms which they would have the federal defendants undertake. Accordingly, they filed a complaint alleging that the Forest Service's management decisions concerning the Medicine Bow National Forest violated Section 7(a)(1) because they did not maximize water available to listed species or implement certain specific snow and vegetation techniques to increase water flow to the Platte River Basin. 48 F. Supp. 2d. at 1307. The federal defendants moved to dismiss these counts for failure to state a claim.

The District of Wyoming granted the motion, finding that:

> The Court has conducted an extensive review of the law in this area, and its research has not revealed one case where a court ordered the federal agency to take specific measures to land, such as ordering that vegetation and snow management programs be implemented. The absences of such a case makes sense: The courts are not in the best position to order a specific affirmative remedy such as clearing a forest.
> Likewise, this Court is not the proper place to adjudge and declare that the defendants have violated the ESA as a matter of law by not implementing the processes listed. The weighty decisions of what an affirmative act will do, in terms of [the Forest Service's] statutory obligations and potential impact on the environment, is better left to the experts in this field. To order such action without going through the proper procedure of ordering analyses and impact

>       statements is unthinkable and judicially irresponsible.
>               In sum, the ESA never envisioned such a remedy for violating § 1536(a)(1) and the Court finds as a matter of law that it will not entertain such an action today.  Defendants' motion to dismiss Plaintiff's ESA claims is thus GRANTED.

Id., at 1316.

Plaintiffs clearly dispute that NMFS is doing enough, and believe that further regulations are necessary for the conservation of the North Atlantic right whale.  However, this Court lacks authority to declare that NMFS has violated the ESA as a matter of law by not implementing the conservation programs advocated by Plaintiffs[3].  Coalition for Sustainable Resources, 48 F. Supp. 2d at 1315-16.  Furthermore, Plaintiffs already have a valid claim against NMFS reviewing the sufficiency of the denial of their petition for the same requested rulemaking. Accordingly, the Court should not permit Plaintiffs to amend their complaint to add a Section 7(a)(1) claim against NMFS.

>       2.      Even if this Court Found That It Could Hear Plaintiffs' ESA Section 7(a)(1) Claim Against NMFS, Plaintiffs Have Failed to Provide the Requisite Sixty-Day Notice and this Court Lacks Jurisdiction.

The ESA allows a citizen to commence a civil suit on his own behalf to enjoin any person "who is alleged to be in violation of any provision of" the ESA or its implementing regulations. 16 U.S.C. § 1540(g)(1)(A).  But the ESA provides that no suit may be brought "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation[.]" 16 U.S.C. §1540(g)(2)(A)(i).

---

[3] The arguments made in pages 8-10, concerning the discretion of federal agencies to determine how to comply with ESA Section 7(a)(1) equally applies to the Coast Guard, if this Court permits amendment of Plaintiffs' Complaint to add an ESA Section 7(a)(1) claim against that agency.

Numerous courts have held that the ESA's 60-day notice requirement is jurisdictional, and failure to adhere to its strictures requires that the case be dismissed. See, Water Keeper Alliance v. U.S. Dep't of Def., 271 F.3d 21, 29-30 (1st Cir. 2001) (noting that in claims brought under the ESA, 60-day notice requirement is jurisdictional); Maine Audubon Soc'y v. Purslow, 907 F.2d 265 (1st Cir. 1990) (ESA notice requirement is jurisdictional); Strahan v. Coxe, 939 F. Supp. 963, 976 (D.Mass. 1996), *aff'd in part and vacated in part*, 127 F.3d 155 (1st Cir. 1997); Sw. Ctr. for Biological Diversity v. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998) ("A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA"); Save the Yaak Comm. v. Block, 840 F.2d 714, 721 (9th Cir. 1988) (holding that the 60-day notice requirement under the citizen-suit provision of the ESA is jurisdictional). The 60-day notice requirement provides for a litigation-free window within which the government agency may, if warranted, cure any alleged violation. See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987); Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1072 (9th Cir. 1996) ("The purpose of this notice is to give the federal government and any alleged violators an opportunity to comply, and thus render a citizen suit unnecessary"). In this case, Plaintiffs submitted a notice of intent to sue to the Coast Guard, dated November 3, 2005. However, this letter failed to reference any alleged violation of ESA Section 7(a)(1) by NMFS. As such, it would be futile for this Court to permit Plaintiffs to amend their complaint to add an ESA Section 7(a)(1) claim against NMFS because such a claim would have to be dismissed for lack of jurisdiction.

**II.     This Court Should Deny the Request to Amend Plaintiffs' Claims Against the Coast Guard Into the Current Litigation Against NMFS.**

Plaintiffs claim that they should be permitted to "simply add an additional legal theory

for plaintiffs' Claim" against NMFS.  Pls.' Mot. at 3.  As demonstrated above, this proposed additional legal theory is unavailable.  Plaintiffs also claim that the proposed claim against the Coast Guard is "closely related" to the current claim against NMFS.  Id.  Except for the broad factual background of involving North Atlantic right whales and ship strikes, the claims against NMFS and the Coast Guard are not related at all.  The current claim against NMFS is one discrete issue - whether, pursuant to the standards of APA Section 706(2)(A), NMFS' September 29, 2005 denial of Plaintiffs' petition for emergency rulemaking is supported by the administrative record.  This claim can be reviewed only on the basis of the administrative record consisting of the documents before the NMFS decision-maker.  Any action or alleged inaction by the Coast Guard has absolutely no bearing on the Court's determination of this distinct issue.

In contrast, the proposed claims against the Coast Guard involve alleged failures to comply with ESA Sections 7 and 9, in connection with numerous distinct regulatory activities that Plaintiffs assert the Coast Guard either took or failed to take, under the Ports and Waterways Safety Act, 33 U.S.C. §§ 1221 et seq.  If these claims are brought into this action, the Coast Guard's administrative record will be completely separate from NMFS' administrative record.  In short, despite Plaintiffs' argument that the claims against the Coast Guard are "closely related" to the single, current claim against NMFS, it is clear that the claims concern completely different agency actions, with completely different administrative records.  Each claim could, and should, be brought as a separate case without requiring joinder of the other administrative agency.  Allowing amendment of the proposed claims against the Coast Guard into the current case will only confuse the single issue presently before the Court.  This Court should exercise its

discretion to keep these separate actions, against separate administrative agencies, as two cases[4].

While Plaintiffs assert that they "intended" all along to amend their complaint once the required 60-day notice for their claim against the Coast Guard passed, Pls.'s Mot. at 3, NMFS was not advised of this intent until days before their answer was due.  Nor does Plaintiffs' 60-day notice letter even mention the current lawsuit against NMFS, much less Plaintiffs' 'intent' to seek to bring the ESA challenges against the Coast Guard in the context of the NMFS litigation.  Nor does the 60-day letter, also addressed to Secretary of Commerce Gutierrez and the Director of NMFS, indicate that Plaintiffs view the claims against the Coast Guard as "closely related" to any action taken by NMFS.  If Plaintiffs intended all of these claims to be brought in the same lawsuit, they could have waited until the 60 days had passed and filed their initial complaint.  However, Plaintiffs chose to file a separate action against NMFS, on one discrete issue.  Where the plaintiff makes a strategical decision not to present a claim at an earlier, more appropriate time in the litigation, a district court may deny a motion to amend the complaint.  Key Airlines, Inc. v. Nat'l Mediation Bd., 745 F. Supp. 749, 752 (D.D.C. 1990).  It is within the sound discretion of the district court to decide whether to grant such leave.  See, e.g., Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243 (DC Cir. 1987); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971).

---

[4] While NMFS informed Plaintiffs that they did object to amendment of the pleading in this case, they did suggest that if Plaintiffs were concerned about judicial economy on the general factual background issues concerning the effects of ship strikes on North Atlantic right whales, the two cases might meet the standards to qualify as related cases under LCvR 40.5(a)(3).  While NMFS would not necessarily object to the cases being related, it does not believe that the general factual background is relevant enough to the central issues of both cases to require the cases to be determined in the same action.

**CONCLUSION**

For the above-stated reasons, NMFS submits that this Court has ample grounds to deny Plaintiffs' motion to amend their complaint in the above-captioned case.

Respectfully submitted this 26th day of January, 2006.

>    SUE ELLEN WOOLDRIDGE
>    Assistant Attorney General
>    United States Department of Justice
>    Environment and Natural Resources Division
>
>    JEAN E. WILLIAMS, Chief
>       /s/ *Bridget Kennedy McNeil*
>    BRIDGET KENNEDY McNEIL, Trial Attorney
>    Wildlife and Marine Resources Section
>    Ben Franklin Station, P.O. Box 7369
>    Washington, D.C. 20044-7369
>    Tel: (202) 305-0388/ Fax: (202)305-0275
>    bridget.mcneil@usdoj.gov
>
>    Attorneys for NMFS

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2006, I electronically filed the foregoing **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO FILE AMENDED COMPLAINT** with the Clerk of Court using the ECF/CM system, which will generate an electronic Notice of Filing on:

**Howard M. Crystal**
howardcrystal@meyerglitz.com

**Eric Robert Glitzenstein**
eric@meyerglitz.com

Pursuant to the Court's mailing information for this case, listed on the ECF system, no parties require manual noticing.

_Bridget Kennedy McNeil_____