UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Defenders of Wildlife, <u>et al.</u> )<br>)  No. 05-2191 (PLF)<br>v. )<br>)<br>Carlos Gutierrez, et al. ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO FILE AMENDED COMPLAINT**

  Defendants offer no legitimate reason for the Court to deny plaintiffs' motion to amend their Complaint both to add an additional legal theory concerning the National Marine Fisheries Service's ("NMFS") denial of plaintiffs' Rulemaking Petition, and to add an additional related claim against the United States Coast Guard ("Coast Guard"). Defendants do not, and cannot, deny that <u>both</u> claims allege that these federal agencies are failing to take the necessary steps to protect critically imperiled North Atlantic right whales – such as the two additional right whale calves that died just last month, one from another ship strike. <u>See</u> Yahoo News, "*Endangered Right Whale Calf Dead in Fla.*" (Jan. 22, 2006), http://news.yahoo.com/s/ap/20060123/ap_on_sc/right_whale.

  To the contrary, defendants evidently acknowledge that plaintiffs could have filed their second claim as a <u>new</u> Complaint against the Coast Guard, and designated the new Complaint as <u>related</u> to this one. <u>See</u> Defendants' Opposition to Plaintiffs' Motion to Amend ("Def. Opp.") at 13 n.4. Especially since the two separate cases would presumably be consolidated, <u>See</u> Fed. R. Civ. P. 42(a) (providing for consolidation where separate actions involve "a common question of law or fact"), it is not at all clear why defendants are expending the Court's time by opposing the Amended Complaint – particularly given the D.C. Circuit's clear admonition that, in considering motions under Rule 15(a), district courts should allow the "maximum opportunity for each claim

to be decided on its merits rather than on procedural technicalities." Belizan v. Hershon, No. 04-7187, 2006 WL 89162, at *4 (D.C. Cir. Jan. 17, 2006) (other citations omitted); see also, e.g., Wright v. Herman, 230 F.R.D. 1, 4 (D.D.C. 2005) ("Rule 15(a) allows a party to amend its pleading to add a new party"). Indeed, the upshot of the government's position appears simply to be that the Court should have two cases on its docket dealing with these related claims, rather than one.

As for the additional theory against NMFS, it is evident from plaintiffs' proposed Amended Complaint that, contrary to defendants' arguments, plaintiffs seek simply to add an additional legal theory to their claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, concerning NMFS's denial of plaintiffs' Rulemaking Petition. See proposed Amended Complaint ("Am. Cmplt."), ¶ 77. Thus, while the original Complaint already asserts that the denial of the Petition is "arbitrary and capricious" in violation of the APA, plaintiffs' proposed amendment explicitly asserts that the denial is also contrary to law in violation of the APA, 5 U.S.C. § 706(2)(a), because it is inconsistent with NMFS's obligations under Section 7(a)(1) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(1), as well as the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1382(a). Am. Cmplt., ¶ 77.

In sum, particularly reading the Complaint in the light most favorable to plaintiffs, as the court must do at this early stage of the litigation, and in view of the fact that all of defendants' arguments can and should be resolved at later stages of the litigation, it is apparent that the proposed amendment should be permitted. See, e.g., Shekoyan v. Sibley Intern. Corp., 217 F. Supp. 2d 59, 74 (D.D.C. 2002) ("The trend in most courts is to permit plaintiff an opportunity to amend")(citation omitted); Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co.,


Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) ("Given the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile"); National City Mtg. Co. v. Navarro, 220 F.R.D. 102, 104-05 (D.D.C. 2004) (if a claim "'may be a proper subject of relief,' a plaintiff "ought to be afforded an opportunity to test his claim on the merits.'") (quoting Foman v. Harris, 371 U.S. 178, 182 (1962)).[1]

A. **Defendants Offer No Legitimate Ground To Deny Plaintiffs' Request To Add A Claim Concerning The Coast Guard's Failure To Take Required Steps To Protect Right Whales From Ship Strikes.**

Defendants do not dispute that plaintiffs may pursue claims against the Coast Guard, or even that such claims would be deemed "related" to the claim against NMFS under this Court's related case rule, if plaintiffs were to file a separate lawsuit against the Coast Guard. Def. Opp. at 13 n.4; see also Local Rule 40.5(a)(3) (cases related where they involve "common issues of fact"). This is because the proposed claim against the Coast Guard arises from the same core facts as the present claim against NMFS, i.e., the alarming increase in right whales being killed and injured by ship strikes. Plaintiffs allege that both agencies share legal responsibility for protecting the North Atlantic right whale from the serious threats posed by these strikes, see Am. Cmplt., ¶¶ 28-36, 49, and that both agencies purport to be taking some administrative steps to deal with this critical issue. Id. ¶¶ 58-59 (describing NMFS plans); ¶¶ 69-70 (describing Coast Guard plans).

---

[1] As explained further below, because the additional theory concerning NMFS simply fleshes out plaintiffs' APA claim, no 60-day notice to NMFS was required. See infra at 11-12.

Moreover, as the agencies themselves have explained, these efforts require significant coordination between the two agencies. See, e.g., 70 Fed. Reg. 8312, 8313 (2005) ("The Coast Guard works in collaboration with NMFS to prevent ship strikes"). However, plaintiffs maintain that, given the urgency of the situation, the agencies are not, individually or collectively, taking sufficient steps, with sufficient speed, to address this crisis.[2]

Thus, while defendants assert that the amendment should not be allowed because the proposed claim against the Coast Guard is "distinct" from that against NMFS, Def. Opp. at 12 – as it true about most separate claims in a complaint – defendants do not explain why that warrants denying the motion to amend. Rather, as the D.C. Circuit recently reaffirmed, the only relevant factors in considering a motion to file an amended complaint are whether the amendment may cause "undue delay [or] prejudice," or whether the movant is acting with "bad faith or dilatory motive[s]." Belizan, 2006 WL 89162, *3 (other citations omitted); see also Carribean Broad. Sys. v. Cable, 148 F.3d 1080 (D.C. Cir. 1998). Certainly, none of those factors is implicated here. Indeed, defendants do not even argue that there would be any prejudice if the Court were to resolve the claims based on separate Administrative Records, presumably because courts routinely consider claims against multiple federal agencies concerning a similar underlying issue, and have little difficulty separately addressing the liability of each agency. See, e.g., Defenders of Wildlife v. Babbitt, 130 F. Supp. 2d 121 (D.D.C. 2001) (addressing the

---

[2]    It bears noting that because one of plaintiffs' major concerns in this suit is the pace at which the agencies are developing protective regulations, plaintiffs believe there is a reasonable possibility that the parties may be able to settle the case after the parties exchange the written settlement proposals outlined in their Rule 16 Report. See Rule 16 Report at 2 (Jan. 26, 2006). Because both NMFS and the Coast Guard share the responsibility to address this issue, those negotiations should involve both agencies.

liability of seven separate agencies for actions affecting one endangered species); see also Haynie v. Veneman, 272 F. Supp. 2d 10, 18 (D.D.C. 2003) ("having to defend against plaintiffs' claims on the merits is precisely what Rule 15 seeks to achieve," and thus does not constitute prejudice).

Moreover, while defendants suggest that having both NMFS and the Coast Guard in one suit might "confuse" the issues here, Def. Opp. at 12, in fact the opposite is true. Given the closely related authorities of NMFS and the Coast Guard concerning the regulation of commercial shipping in right whale habitat, there is a danger that without the presence of both defendants in a single suit, each agency may seek to shift responsibility for protecting right whales to the other agency. Thus, by having both agencies in one suit there is likely to be less, not more, confusion over which agency is legally responsible here. In any case, plaintiffs are fully confident that the Court and the parties can address whatever legal differences are pertinent to each agency – just as they would if related cases were filed and consolidated.

Defendants also assert that plaintiffs could have waited until the 60-day notice period had run on plaintiffs' Coast Guard claims, and then filed one Complaint that covered all the claims in the proposed Amended Complaint. Def. Opp. at 13. Again, however, that fact cuts in favor of allowing the amendment, not against it, since it makes clear that there is no conceivable reason for the Court to not consider both of these claims in one suit. Once again, the government has not articulated any prejudice that it has suffered from the plaintiffs proceeding as they have – especially since, as defendants acknowledge, id. at 13, plaintiffs advised defendants prior to the filing of defendants' Answer that plaintiffs intended to amend, and suggested that defendants defer their Answer until after the amendment.

Moreover, given the number of right whales that continue to die from ship strikes and the extremely depleted number of individual right whales that remain, combined with the agencies' refusal to take immediate steps to address the matter, plaintiffs concluded that it was critical to proceed on both fronts – i.e., initiating the litigation against NMFS, and serving notice on the Coast Guard, as required by the ESA – as soon as possible. Certainly the fact that, in light of the urgent circumstances, plaintiffs decided to file suit against NMFS once that agency denied the Rulemaking Petition for emergency regulations, rather than waiting several more months before initiating this litigation, is not even remotely a reason to deny the motion to amend, as defendants suggest. In any event, defendants' acknowledgment that plaintiffs could have filed one complaint against both NMFS and the Coast Guard after the notice period expired merely highlights that there is no legitimate reason – particularly in light of Rule 15's very liberal standard – to prevent plaintiffs from filing that complaint now, as they propose to do. Fair Employment Council of Greater Wash. v. BMC Mktg Corp., 28 F.3d 1268, 1275 (D.C. Cir. 1994); Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999).[3]

**B.    Defendants Also Offer No Legitimate Ground To Deny Plaintiffs' Request To Flesh Out Their Claim Against NMFS.**

Defendants' sole argument against plaintiffs' request to amend their claim against NMFS is that the amendment would be futile because, according to the government, plaintiffs will not

---

[3]    Defendants' further suggestions that the court should disallow the amendment because plaintiffs made some "strategical" decision, Def. Opp. at 13, not to file their claims all at once makes no sense, since the strategic decision they are referring to is plaintiffs' decision to file suit rather than wait for more right whales to be killed before initiating the litigation. And, as noted, defendants also cannot legitimately claim prejudice by plaintiffs' seeking to amend the Complaint after NMFS filed an Answer, id., since plaintiffs informed defendants of their intention to amend more than a week before the Answer was due, and suggested that defendants wait until the Amended Complaint was filed before filing an Answer at all.

prevail on the claim for various reasons. Def. Opp. at 2-10. However, while, as explained below, all of these reasons are groundless, the Court certainly need not resolve any of these issues at this early stage of the litigation, for, as the Supreme Court has held, so long as a claim "<u>may</u> be a proper subject of relief, the plaintiff ought to be required to test that claim on its merits by moving forward." <u>Foman</u>, 371 U.S. at 182 (emphasis added); <u>see</u> also <u>Pharmaceutical Research and Man. of Am. v. Thompson</u>, 259 F. Supp. 2d 39, 61 (D.D.C. 2003) (even where plaintiffs' proposed amendment was based on a "dubious res judicata argument," the court permitted an amended complaint, in light of "the generous standard for permitting amendment of complaints under Fed. R. Civ. P. 15(a)"); <u>Herman</u>, 230 F.R.D. at 11 (although the court made "no conclusions about the actual merits of" plaintiffs' proposed amended claims, amendment was allowed, because claims were "not futile for failure to state a claim"); <u>Delavau</u>, 106 F. Supp. 2d at 764 ("Given the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile").

In any event, none of defendants' arguments even remotely calls into question the viability of plaintiffs' additional legal theories against NMFS. <u>First</u>, while defendants argue against legal theories plaintiffs have <u>not</u> presented – such as a <u>direct</u> claim under the MMPA, which has no citizen suit provision, Def. Opp. at 3-4 – there can be no dispute that plaintiffs can pursue the theories they <u>have</u> presented. <u>See</u> Am. Cmplt., ¶ 77. In short, plaintiffs seek to argue that NMFS' denial of plaintiffs' Rulemaking Petition – which sought emergency regulations to immediately protect right whales from ship strikes – violated the APA, because, among other reasons, it was in contravention of the agencies' obligations under the ESA and the MMPA. <u>Id.</u>

Thus, with regard to the MMPA, plaintiffs simply seek to argue that the denial of the Rulemaking Petition was "not in accordance with law," 5 U.S.C. § 706(2)(A), because it ran counter to the agency's mandate under the MMPA to "prescribe such regulations as are necessary and appropriate to," *inter alia*, protect marine species such as right whales "from the adverse effect of man's actions." 16 U.S.C. §§ 1382(a), 1361(2). The fact that the MMPA itself has no citizen suit provision has <u>nothing</u> to do with whether plaintiffs may pursue this legal theory under the APA, as they surely may. <u>See</u>, <u>e.g.</u>, <u>NRDC v. Evans</u>, 364 F. Supp. 2d 1083, 1093 (N.D. Cal. 2003) ("Citizens challenging actions done under the MMPA must sue under the APA").[4]

Likewise, there is no reason why plaintiffs may not base their APA claim, in part, on NMFS's responsibilities under Section 7(a)(1) of the ESA. 16 U.S.C. § 1536(a)(1). That provision requires that NMFS "shall review other programs administered by [the agency] and utilize such programs in furtherance of the purposes of this chapter." 16 U.S.C. § 1536(a)(1). Once again, among the various "programs" that NMFS administers is the MMPA. 16 U.S.C. §§ 1382(a), 1361(2). Thus, as reflected in the proposed Amended Complaint, plaintiffs allege that, in light of the depleted status of the right whale and the overwhelming evidence that ship strikes are a major threat to the species, NMFS's decision to deny the Rulemaking Petition was contrary to law, and thus violated the APA, in part because NMFS did not "utilize" its authority under the MMPA to further the protection of right whales. Am. Cmplt., ¶ 77. There is no valid reason why plaintiffs may not pursue this legal theory.

---

[4] Although plaintiffs do not believe the proposed Amended Complaint is at all confusing on this point, just to be absolutely clear, in alleging that NMFS's denial of the Rulemaking Petition was contrary to the MMPA, and the ESA, plaintiffs are simply seeking to present an <u>APA</u> claim that the decision was "otherwise not in accordance with" those statutes, 5 U.S.C. § 706(2)(A), not a claim directly under those statutes.

Defendants' argument to the contrary simply ignores Bennett v. Spear, 520 U.S. 154, 173 (1997), which held that, for ESA violations not covered by the ESA citizen suit provision, a plaintiff may nevertheless challenge an agency's final agency action as inconsistent with the ESA through an APA claim.  Id. at 174-77; see also, Common Sense Salmon Recovery v. Evans, 329 F. Supp. 2d 96, 102 (D.D.C. 2004) ("Claims under the ESA that challenge final agency action as to which there is no specific review provision are governed by the APA"); Building Ind. Assn of Superior Cal. v. Babbitt, 979 F. Supp. 893, 900 (D.D.C. 1997) ("suits . . . to compel the Secretary to perform his statutory responsibilities under the ESA, for example, are cognizable only under the APA").  Thus, there can be no serious dispute that plaintiffs can base their APA claim on arguments that, in denying the Rulemaking Petition, NMFS has acted contrary to its obligations under both the MMPA and the ESA.[5]

Second, contrary to defendants' arguments, Def. Opp. at 4-10, there can also be no legitimate dispute that this Court may review whether NMFS's decision to deny the Rulemaking Petition complies with the agency's obligations under ESA Section 7(a)(1).  While, as defendants emphasize, courts have noted that agencies have substantial discretion in implementing Section 7(a)(1), courts have regularly considered these claims on the merits – i.e., for whether the agency has abused its discretion – including in the specific case defendants cite.  Id. at 7, citing Norton, 130 F. Supp. 2d at 135 (reviewing agency compliance with Section 7(a)(1)); see also, e.g., Sierra Club v. Glickman, 156 F.3d 606, 617 (5th Cir. 1998) ("That Congress has passed a statute that is exceptionally broad in its effect, in the sense that it imposes a tremendous burden on the federal

---

[5]  Since plaintiffs' challenge on this score is to the denial of the Rulemaking Petition, which is plainly a "final agency action," defendants' suggestion that plaintiffs are challenging some nebulous "failure to act," Def. Opp. at 4, is also simply wrong.

agencies to comply with its mandate, however, does not mean that it is written in such broad terms that in a given case there is no law to apply. On the contrary, given the specific requirements of § 7(a)(1), <u>in any given case there is more than enough law against which a court can measure agency compliance</u>") (emphasis added); <u>Florida Key Deer v. Brown</u>, 364 F. Supp. 2d 1345, 1360-61 (S.D. Fla. 2005) (granting relief for Section 7(a)(1) claim). Accordingly, there is no ground for concluding that amending the Complaint to add this legal theory would be futile on that basis. Rather, the government has simply raised a <u>merits</u> issue that should be resolved on the basis of the Administrative Record.

<span style="padding-left:2em"><u>Third</u>, defendants' related argument that, while Section 7(a)(1) may impose obligations</span> on <u>other</u> federal agencies, it imposes none on NMFS itself is also widely off the mark. Def. Opp. at 6-7. Not only is there no need for the Court to resolve this merits-based argument at this early stage, but two district courts have recently rejected this same argument. <u>See</u> <u>Defenders of Wildlife v. Sec'y, Dep't of the Interior</u>, 354 F. Supp. 2d 1156, 1173-74 (D. Or. 2005); <u>National Wildlife Fed. v. Norton</u>, 386 F. Supp. 2d 553, 567 (D. Vt. 2005). In both of these cases – neither of which are mentioned by the government – the U.S. Fish and Wildlife Service ("FWS") (the other federal agency that administers the ESA) argued that because the first sentence of Section 7(a)(1) speaks to the review of "other programs," 16 U.S.C. § 1536(a)(1), it only applies to "federal programs other than the FWS's administration of the Endangered Species Act." 386 F. Supp. 2d at 567. However, the courts <u>rejected</u> this argument, finding that it would be "inconsistent with the Act" to find the FWS exempt "from the duty to utilize its conservation authority" as mandated by Section 7(a)(1). <u>Defenders of Wildlife</u>, 354 F. Supp. 2d at 1174. There is no discernible reason for this Court to reach a different conclusion here, and, in any

event, these rulings make it absolutely clear that, at the very least, the matter "may be a proper subject of relief," Foman, 371 U.S. at 182, which is all that the Court need decide at this point.

Finally, although, once again, it is not necessary for the Court to even resolve the matter at this stage, defendants are also wrong in claiming that plaintiffs were required to provide NMFS with 60 days notice before presenting their claim that NMFS' denial of the Rulemaking Petition also violated the APA because it was contrary to Section 7(a)(1) of the ESA. Def. Opp. at 10-11. Once again, defendants' argument is impossible to square with the Supreme Court's ruling in Bennett. 520 U.S. 154. As this Court has noted, in Bennett the Supreme Court ruled that, with the exception of claims under Section 4 of the ESA, 16 U.S.C. § 1533 (which is not at issue here), any other claims seeking "to compel [the FWS or NMFS] to perform [its] statutory responsibilities under the ESA . . . are cognizable only under the APA." Babbitt, 979 F. Supp. at 900 (emphasis added).[6]

Therefore, since, in accordance with Bennett v. Spear, plaintiffs have pled an APA claim based in part on NMFS's compliance with ESA Section 7(a)(1), see Am. Cmplt., ¶ 77, and may only raise this issue through an APA claim, there is no sound basis for arguing that plaintiffs were obliged to provide 60-days notice, which only applies to claims brought directly under the ESA citizen suit provision. See, e.g., Southwest Center for Biological Diversity v. Bureau of

---

[6] The Supreme Court reached this conclusion because the ESA citizen suit provision specifically permits suits against NMFS and the FWS only for violations of Section 4, 16 U.S.C. § 1540(g)(1)(C), and thus, the Supreme Court concluded, the general provision permitting suits against "any person" for violating the statute does not apply to those agencies' implementation of the ESA. Bennett, 520 U.S. at 173-74. Accordingly, any claim concerning those agencies' violations of ESA provisions other than Section 4 – which the Supreme Court labeled "maladministration" claims – can only be pled as APA claims. Id. at 174. By contrast, plaintiffs' allegation that the Coast Guard is violating Section 7(a)(1), Am. Cmplt. ¶ 80, is an ESA claim, and thus was addressed in plaintiffs' 60-day notice letter to that agency.

Reclamation, 143 F.3d 515, 520-523 (9th Cir. 1998) (distinguishing between ESA Section 7 claims against other agencies, for which notice is required, and Section 7 claims directly against the FWS and NMFS, for which no notice is required because they present APA claims). Accordingly, this is also not a basis to conclude that the amendment concerning the NMFS claim would be so futile that leave to amend should be denied.[6]

## Conclusion

For the foregoing reasons, the Court should grant plaintiffs' Motion to file an Amended Complaint in this action. In doing so, the Court need not definitively rule on any of the legal issues raised by the government, but may defer those issues to subsequent stages of the litigation.

Respectfully submitted,

Howard M. Crystal (D.C. Bar No. 446189)
Eric R. Glitzenstein (D.C. Bar No. 358287)
Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
(202) 588-5206

Of Counsel:

Michael P. Senatore (D.C. Bar No. 453116)
Andrew Hawley (Cal. Bar No. 229274)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036

Attorneys for Plaintiffs

February 2, 2006

---

[6] Defendants' further suggestion that plaintiffs should not be able to add these theories because they have already presented an arbitrary and capricious claim, Def. Opp. at 10, also makes little sense, since plaintiffs routinely present – and courts routinely rule on – alternative legal theories.