Plaintiffs' Exhibit 4
Defenders of Wildlife v. Gutierrez
No. 05-2191 (PLF) (D.D.C.)

**DEFENDERS OF WILDLIFE – THE HUMANE SOCIETY OF THE UNITED STATES – INTERNATIONAL FUND FOR ANIMAL WELFARE – INTERNATIONAL WILDLIFE COALITION - NATIONAL ENVIRONMENTAL TRUST – NATURAL RESOURCES DEFENSE COUNCIL – OCEANA – THE OCEAN CONSERVANCY – WHALE AND DOLPHIN CONSERVATION SOCIETY**

May 19, 2005

The Honorable Carlos Gutierrez
Secretary of Commerce
Office of the Secretary
United States Department of Commerce
14th and Constitution Avenue, N.W.
Washington, D.C. 20230

Vice Admiral Conrad C. Lautenbacher
Administrator of the National Oceanic and Atmospheric Administration
Department of Commerce
14th Street & Constitution Avenue, NW, Room 6013
Washington, DC 20230

William T. Hogarth, Ph.D.
Assistant Administrator for Fisheries
National Marine Fisheries Service
1315 East-West Highway, Room 14564
Silver Spring, MD 20910

Re:    Petition for Initiation of Emergency Rulemaking to Prevent the Extinction of the North Atlantic Right Whale

Dear Secretary Gutierrez, Administrator Lautenbacher and Administrator Hogarth:

The North Atlantic right whale population is being driven toward extinction in large part due to mortalities and injuries caused by ship strikes. We write to request, pursuant to 5 U.S.C. § 553(e), that the Department of Commerce, through the National Marine Fisheries Service ("NOAA Fisheries") act immediately, under the authority of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., and the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 et seq., to initiate an emergency rulemaking to protect this critically endangered species.

The North Atlantic right whale is the most endangered of all the large whale species and is arguably one of the most endangered species worldwide. Its imperiled status is largely due to ongoing pressure placed on the population from anthropogenic factors, including habitat degradation, and injury and death due to entanglement in fishing gear and ship strikes. In fact, human activities cause at least fifty percent of all right whale mortalities, with incidents of ship strikes alone accounting for over thirty-seven percent of all known right whale deaths since 1986. Kraus, S. D. et al. 2005. North Atlantic Right Whales in Crisis. Science. Science 2005 in press. ("Of the 48 dead right whales reported since 1986, at least 18 were killed by vessel

collisions, and six were killed by entanglements in fishing gear.").[1] Right whales are particularly vulnerable to ship strikes because their habitat requirements and coastal migration necessitate their use of waters heavily traversed by shipping traffic, and their feeding, resting and socializing behaviors, bring them to the surface quite often. See NOAA Fisheries, Biological Opinion on American Lobster Fishery, 96 (2001); see also NOAA, Large Whale Ship Strike Database, 2, 5 (January 2004) ("[g]iven the low abundance of right whales relative to other species, the frequency of occurrence of ship strikes to right whales suggests that the threat of ship strikes is proportionally greater to this species.").

Recently, the devastating impact ship strikes are having on the population has been brought into sharp focus. Over the past eighteen months, eight right whale deaths have been reported,[2] and at least four of these have been, or are suspected to be, the result of ship strikes. On average, over the past twenty years, the right whale population has experienced an annual mortality rate of roughly two individuals per year. Waring, G. et al. Eds. 2004. U.S. Atlantic and Gulf of Mexico Marine Mammal Stock Assessments—2003. NOAA Technical Memorandum NMFS-NE-182 ("Stock Assessment") (calculating a five-year average mortality rate of 2.0 for the period of 1997-2001).[3] Thus, the loss of eight whales in less than a year and a half represents a mortality rate nearly *three times* the annual average.

This degree of loss is clearly unsustainable in a species that is already declining. Indeed, as a result of the dire status of the right whale population, NOAA Fisheries has calculated that the maximum number of individuals that could be removed annually by anthropogenic sources, and still retain a viable population, is zero. See Stock Assessment. Thus, the recent events have taken an unimaginable toll on a population that NOAA Fisheries has stated is so fragile that given the species' "low population size, and their poor reproductive rate, the loss of even one northern right whale . . . may reduce appreciably the likelihood of both survival and recovery of this species by reducing the number of right whales and their ability to reproduce." NOAA Fisheries, Biological Opinion on American Lobster Fishery, 100 (2001).

Even more disturbing, five of the individuals lost in the last eighteen months were reproductively mature females – at least three of which were pregnant at the time they were killed. The death of these six individuals represents a loss of more than five percent of the total female breeding population. The loss of this number of reproductive females, in such a short period, is unprecedented in 25 years of study of this species. Reproductive females represent the key to the recovery of the species, and to lose not one, but five reproductively mature females from this population in an eighteen-month period is virtually catastrophic for the species.

---

[1] See also Knowlton A.R. and S.D. Kraus. 2001 Kraus. Mortality and serious injury of northern right whales (*Eubalaena glacialis*) in the western North Atlantic Ocean. Jour. Cetacean Res. And Manag. (Special Issue) 2:193-208. (noting that ship strikes caused 47.4 percent of reported right whale deaths between 1990 and 1999.)

[2] These mortalities represent only those animals whose bodies were found, and should be considered a minimum estimate of actual deaths. The right whale stock assessment acknowledges that "some injury or mortality due to ship strikes almost certainly passes undetected, particularly in offshore waters." See Stock Assessment.

[3] See also Kraus, S. D. et al. 2005. (reporting a mortality rate averaging 2.4 per year).

## The National Marine Fisheries Service Has the Authority and Duty to Implement Emergency Regulations

Both the ESA and the MMPA mandate that NOAA Fisheries protect and recover the North Atlantic right whale population. To meet these statutory mandates, NOAA Fisheries must ensure that the right whale is not driven further toward extinction as a result of ship strikes, by promulgating regulations to reduce, and eventually eliminate, this threat.

Pursuant to Section 7(a)(1) of the ESA, NOAA Fisheries has the specific, affirmative duty to provide for the conservation of the right whale by developing meaningful protections for the population designed to improve the viability of the species. 16 U.S.C. § 1536(a)(1); see also id. §§ 1531(b); 1532(3). Thus, NOAA Fisheries must actively pursue the recovery of the species, to the point where it can once again maintain a healthy, viable population in the wild. Fulfilling this mandate requires that NOAA fisheries take the necessary steps to regulate the operation of all vessels within right whale habitat, through the implementation of routing, speed and other operational measures, to prevent ship strikes. See id. § 1540(f).

In addition, NOAA Fisheries has an obligation to enforce the prohibition against the "take" of right whales. See id. §§ 1538; 1540(e). The ESA defines take to include engaging in or attempting to engage in conduct that will "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" an individual of a listed species. Id. § 1532(19).[4] Here, ship strikes of right whales are clearly "taking" whales in violation of Section 9 of the ESA, and therefore, NOAA Fisheries must regulate the operations of ships within right whale habitat, in order to eliminate such takes.

Similarly, the MMPA requires NOAA Fisheries to "prescribe such regulations as are necessary and appropriate to" meet the mandates of the statute. Id. § 1382(a). Specifically, the MMPA seeks to maintain stable, functioning marine ecosystems and to secure and restore healthy marine mammal populations. Id. § 1361(2). To achieve these goals, NOAA Fisheries is directed to protect imperiled marine mammal species, including protecting essential habitats, such as mating and nursery grounds and other significant areas, from the adverse effects of human activity. Id. § 1361(2), (6). Moreover, the MMPA has a broad prohibition against the take of marine mammals. Id. §§ 1372(a); 1362(13) (defining "take" as "to harass, hunt, capture, or kill" a marine mammal, or attempt to do so.) Therefore, the MMPA clearly provides the legal basis and mandate for NOAA to institute regulations, laying out specific operational measures designed to reduce the threat of ship strikes within right whale habitat.

## The National Marine Fisheries Service Must Act Now To Protect the Right Whale

We are petitioning NOAA Fisheries to promulgate emergency regulations, within sixty days, to slow and/or re-route vessels within right whale habitat, as a means of protecting the species until such time as permanent measures can be enacted. Such emergency regulations should require all ships entering and leaving all major East Coast ports to travel at speeds of 12

---

[4] NOAA Fisheries defines "harm" to include "an act which actually kills or injures fish or wildlife. Such an act may include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering." 50 C.F.R. § 222.102.

- 3 -

knots or less within 25 nautical miles of port entrances during expected right whale high use periods.[5] These measures should be in place between 1 November through 30 April for all ports from Florida north to Rhode Island; from 1 January through 31 May in the area of Cape Cod Bay; and in the area of the Great South Channel from 1 January through 31 July. Further, given the high seasonal right whale aggregation in the area, similar speed restrictions should be placed on all ships traveling in the Boston Traffic Separation Scheme from 1 January through 31 July. Moreover, all vessels traveling within right whale critical habitat during the seasonal high use times should be required to proceed at 12 knots or slower, or avoid the area altogether.

In addition, NOAA Fisheries should institute dynamic management areas to protect whales outside of the times and areas described above.[6] This dynamic management system should require the re-routing of vessels and/or operation at speeds of 12 knots or slower, when aggregations of whales are found in areas where other protective measures are not in place. It is clear that NOAA Fisheries needs measures to restrict vessel speed and/or route vessels around areas with unexpected aggregations of whales, because many of the right whale deaths have occurred in areas and times outside of the high use periods and critical habitat areas.

As explained above, NOAA Fisheries is legally obligated to protect this strategic stock from further mortalities and serious injuries resulting from ship strikes. It is therefore imperative that action be taken, in an expeditious manner, to meet these obligations, and reverse the spiraling trend of the North Atlantic right whale towards extinction. To do otherwise would compel us to consider all appropriate remedies, including legal action, to ensure that NOAA Fisheries acts in accordance with the law.

Sincerely,

Jonathan R. Lovvorn
Vice President, Animal Protection Litigation
The Humane Society of the United States

Mike Senatore
Vice President, Conservation Litigation
Defenders of Wildlife

Frederick M. O'Regan
President
International Fund for Animal Welfare

---

[5] The ports included in this regulation should include, but not necessarily be limited to: Jacksonville, Florida; Savannah, Georgia; Charleston and Georgetown, South Carolina; Wilmington and Morehead City, North Carolina; ports in Chesapeake Bay and Delaware Bay; New York; Narragansett Bay; Boston, Massachusetts; and Portland, Maine.

[6] The agency presented information at the stakeholder meetings indicating that a retrospective analysis of 1998-2002 found that at least 28 such actions would have been necessary from the mid-Atlantic through Maine.

Dan Morast
Executive Director
International Wildlife Coalition

Gerry Leape
Vice President for Marine Conservation
National Environmental Trust

Cara Horowitz
Project Attorney
Natural Resources Defense Council

Dr. Michael Hirshfield
Vice President for North American Oceans
Oceana

Nina M. Young
Director of Wildlife Conservation
The Ocean Conservancy

Chris Butler-Stroud
Chief Executive
Whale and Dolphin Conservation Society