UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Defenders of Wildlife, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Carlos Gutierrez, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> )    No. 05-2191 (PLF) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD
AND SUPPORTING MEMORANDUM**

Plaintiffs hereby request that the Court supplement the Administrative Records ("AR") in this action by considering additional documents that the National Marine Fisheries Service ("NMFS") and the U.S. Coast Guard ("Coast Guard") have declined to include in their respective ARs. Because, as explained below, each of these records was either before the agencies in making the decisions under review, or are otherwise properly considered by the Court here, the Court should grant the motion and consider these materials in resolving the parties' cross-motions for summary judgment.

**Background**

As detailed in the accompanying summary judgment memorandum, this case concerns the critically imperiled North Atlantic right whale, and the imminent threats that ship strikes at high speeds pose to the species. Plaintiffs are asking the Court to set aside NMFS's denial of plaintiffs' Rulemaking Petition seeking emergency vessel speed restrictions, and to order the Coast Guard to take the steps necessary to insure that these vessels are not jeopardizing the right whale or adversely modifying right whale critical habitat.

On February 22, 2006, the Court approved the parties' Joint Scheduling Order, which provided that defendants would produce the Administrative Records by March 31, 2006. See Joint Proposed Scheduling Order (Feb. 17, 2006). Although, in order to insure that the ARs were complete, in March, 2006, plaintiffs outlined to defendants the materials that should be included, defendants were not willing to discuss the scope of the ARs before they were produced. Pl. Mar. 13, 2006 Letter (Att. 1); Def. Mar. 21, 2006 Letter (Att. 2). On or about March 31, 2006, defendants produced the one-volume NMFS AR, and the six-volume Coast Guard AR.

As plaintiffs had anticipated, the two ARs were not complete. Of particular relevance here, the NMFS AR did not include many of the scientific studies discussing the status of the right whale, the risks to the species posed by ship traveling at unsafe speeds, and the efficacy of speed restrictions and other measures to ameliorate those risks. To address this concern, plaintiffs proposed that, rather than adding those items to the AR produced by NMFS, plaintiffs would simply provide them to the Court with their summary judgment memorandum. Pl. Apr. 12, 2006 Letter at 4 (Att. 3). Defendants had no objection to plaintiffs' use of these documents as background materials. Def. Apr. 17, 2006 Letter (Att. 4).[1]

---

[1] Although plaintiffs raised a number of other concerns with the NMFS AR, see Att. 3, they decided not to pursue those issues in order to avoid any delay in the resolution of their claims. Pl. Apr. 19, 2006 Letter (Att. 5); Def. Apr. 20, 2006 Letter (Att. 6). Nonetheless, purportedly to address plaintiffs' concerns, NMFS chose to remove several documents from the original NMFS AR, and filed a revised AR with the Court. See Notice of Filing (May 2, 2006). As noted below, plaintiffs seek to rely on one of these removed documents.

As regards the Coast Guard, although plaintiffs also raised concerns about that AR, and the Coast Guard made some additional documents available for plaintiffs' review, the Coast Guard would not add those documents to the Coast Guard AR. See Pl. May 12, 2006 Letter (Att. 7) and Def. May 17, 2006 Letter (Att. 8).

The parties' Joint Scheduling Order required that, by April 21, 2006, the parties notify the Court how they intended to resolve any outstanding AR issues in this case. In light of plaintiffs' remaining concerns, in that filing plaintiffs explained that concurrently with their summary judgment memorandum they intended to file a motion to supplement the record with specific documents they seek to have the Court consider. See Joint Notice Concerning Administrative Record, ¶ 3 (Apr. 21, 2006). Defendants had no objection to this approach. Id.

Accordingly, by this motion plaintiffs request that the Court consider ten scientific documents:

1. "Large Whale Ship Strikes Relative To Vessel Speed." NOAA Fisheries white paper (Pl. Ex. 6)[2]

2. National Marine Fisheries Service. 2005. Recovery Plan for the North Atlantic Right Whale (*Eubalaena glacialis*) (Pl. Ex. 9)

3. Scott D. Kraus et al., *North Atlantic Right Whales in Crisis*, SCIENCE, July 22, 2005 (Vol. 309) (Pl. Ex. 10)

4. Michael J. Moore et al., *Morphometry, gross morphology and available histopathology in North Atlantic right whale (*Eubalaena glacialis*) mortalities (1970-2002)*, 6 J. Cetacean Res. Manage. 1 (2005) (Pl. Ex. 11)

5. Russell, Bruce A., White paper: Recommended Measures To Reduce Ship Strikes of North Atlantic Right Whales. Aug. 2001 (Pl. Ex. 14)

6. David W. Laist et al., *Collisions Between Ships and Whales*, 17 Marine Mammal Sci. 35 (2001) (Pl. Ex. 25)

7. Misty Niemeyer et al., "North Atlantic Right Whale Sighting Survey (NARWSS) and Right Whale Sighting Advisory System (RWSAS): 2005 Results Summary." Northeast Fisheries Science Center. (Pl. Ex. 30)

---

[2] Plaintiffs have filed these documents at exhibits to the accompanying summary judgment memorandum, and the exhibit numbers refer to that memorandum.

8. Amy R. Knowlton & Scott D. Kraus, *Mortality and serious injury of northern right whales (*Eubalaena glacialis*) in the western North Atlantic Ocean*, 2 J. Cetacean Res. Manage. 193 (2001) (Pl. Ex. 31)

9. Gregory K. Silber et al., "Ship Traffic Patterns in Right Whale Critical Habitat: Year One of the Mandatory Ship Reporting System." NOAA Technical Memorandum (Jan. 2002) (Pl. Ex. 32)

10. Amy R. Knowlton et al., "Right Whale Sightings and Survey Effort in the Mid Atlantic Region: Migratory Corridor, Time Frame, and Proximity to Port Entrances." Report submitted to the NMFS ship strike working group (July 2002) (Pl. Ex. 33)

Plaintiffs also seek to have the Court consider six Federal Register Notices published by the federal defendants:

1. Designated Critical Habitat; Northern Right Whale, 59 Fed. Reg. 28,793 (June 3, 1994) (Pl. Ex. 8)

2. Magnuson-Stevens Fishery Conservation and Management Act Provisions; Fisheries of the United States; Essential Fish Habitant, Notice of Receipt of Rulemaking Petition, 69 Fed. Reg. 32,991 (June 14, 2004) (Pl. Ex. 26)

3. Fisheries of the Northeastern United States; Atlantic Sea Scallop Fishery; Petition for Rulemaking; Request for Comments, 69 Fed. Reg. 40,850 (July 7, 2004) (Pl. Ex. 27)

4. Taking of Marine Mammals Incidental to Commercial Fishing Operations; Atlantic Large Whale Take Reduction Plan (ALWTRP), 71 Fed. Reg. 28,587 (May 17, 2006) (Pl. Ex. 28)

5. Port Access Routes; Study Dates and Contact Points, 44 Fed. Reg. 22,543 (Apr. 16, 1979)(Pl. Ex. 12)

6. Port Access Route Study Results, 47 Fed. Reg. 879 (Jan. 7, 1982) (Pl. Ex. 13)

Finally, plaintiffs seek to have the Court consider three additional documents. The first two are correspondence between NMFS and the Marine Mammal Commission, concerning the need for emergency regulations to protect right whales, and the timing for the rulemaking process. Pl. Ex. 16 and 29. One of these records (Pl. Ex. 29) was in NMFS's original AR, but

was subsequently removed. The third record is a one page document from the Coast Guard. Pl. Ex. 7. As explained below, it is appropriate for the Court to consider each of these documents in resolving plaintiffs' claims.

As required by Local Rule 7(m), plaintiffs' counsel sought defendants' position on this motion. Defendants' counsel has responded as follows:

(a) "the Coast Guard does not agree that any of the named documents are properly part of the administrative record for any of the Coast Guard actions challenged in the complaint," but "takes no further position on plaintiffs' reliance on such documents" until it has reviewed plaintiffs' briefing;

(b) while NMFS "does not object to the background use of these scientific studies," NMFS reserves the right to object to their use for other purposes;

(c) NMFS also opposes plaintiffs' reliance on the correspondence between NMFS and the Marine Mammal Commission (Pl. Ex. 16 and 29); and

(d) while NMFS "does not generally object to the use of Federal Register notices," it reserves the right to object to plaintiffs' reliance on these Notices once it reviews plaintiffs' memorandum.

## ARGUMENT

**A.    The Court Should Consider The Scientific Studies.**

As noted, in response to plaintiffs' concern that the NMFS AR did not include many of the relevant scientific studies, plaintiffs proposed to provide those studies to the Court with their summary judgment memorandum, and defendants did not object to their use as background materials. It is entirely appropriate for the Court to consider these studies. The Administrative Procedure Act ("APA") provides that in reviewing agency action a court must consider the "whole record or those parts of it cited by a party . . . ." 5 U.S.C. § 706 (emphasis added). Thus, as the Supreme Court has explained, "review is to be based on the full administrative record that

was before the [agency] at the time [it] made [its] decision." Citizens to Preserve Overton Park, 401 U.S. 402, 420 (1971); Biodiversity Legal Foundation v. Norton, 180 F. Supp. 2d 7, 10 (D.D.C. 2001) (courts "'should have before [them] neither more or less information than did the agency when it made its decision'"), quoting Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984).

    In this case, the first two of the scientific documents were prepared by NMFS itself, which certainly means that they were "before" the agency in denying plaintiffs' Rulemaking Petition. As for the other studies, they are either contained on NMFS websites, or are otherwise well-recognized scientific papers that NMFS plainly should have relied on in its decision-making concerning protective measures for right whales. Accordingly, they are properly part of the AR for plaintiffs' APA claim against NMFS.

    Indeed, assuming arguendo that NMFS deliberately did not consider these scientific papers in connection with Plaintiffs' Petition, the Court should nonetheless consider them to evaluate whether NMFS's failure to "examine[d] the relevant data" itself violates the APA here. Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 42-43 (1983). Thus, courts have not hesitated to consider extra-record materials that demonstrate critical matters that an agency did not, but should have, considered in its decision-making. See, e.g., Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989); see also The Humane Society of the United States v. Department of Commerce, No. 05-1392, _ F. Supp. 2d _, 2006 WL 1453052 (D.D.C. May, 26, 2006).[3]

---

[3]     Thus, for example, in cases under the National Environmental Policy Act, 42 U.S.C. § 4321, et seq., courts routinely consider evidence concerning environmental impacts that an agency should have, but did not, consider. Esch, 876 F.2d at 991; see also, e.g., American

Accordingly, the Court should consider plaintiffs' exhibits 6, 9, 10, 11, 14, 25, and 30-33 in resolving the parties' cross-motions for summary judgment.

**B.      The Court Should Consider The Federal Register Notices.**

For largely the same reasons, the Court should also consider the Federal Register Notices plaintiffs have submitted, each of which were published by either NMFS or the Coast Guard. Certainly, these documents were "before" the agencies. Citizens to Preserve Overton Park, 401 U.S. at 420. Moreover, they also help to further explain the context of plaintiffs' claims here.

For example, the Critical Habitat Notice (Pl. Ex. 8) discusses the importance of the right whale critical habitat areas, and thus further demonstrates the need for the Coast Guard to engage in Section 7(a)(2) consultation under the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), regarding its Traffic Separation Schemes ("TSSs"), which go right through one of these critical habitat areas. This Notice also discusses the status of the species, providing additional context to both of Plaintiffs' claims.

Two of the other Federal Register notices concern NMFS's practice regarding Rulemaking Petitions, and thus are relevant to the adequacy of NMFS's explanation for its denial of Plaintiffs' Rulemaking Petition in this case. Pl. Exs. 26 and 27. In particular, in light of NMFS's claim that it denied the Petition in order to permit public comment on vessel speed restrictions, see 70 Fed. Reg. 56,884 (2005)(Pl. Ex. 5), the Court should consider the fact that, in response to other such Petitions – including for emergency regulations – NMFS has sought public comment on the Petition itself, thereby addressing that precise concern. Id. Accordingly, these documents facilitate the Court's review of whether the agency has a "reasonable

---

Rivers v. U.S. Army Corps of Engineers, 271 F. Supp.2d 230, 247 (D.D.C. 2003)

explanation of [its] failure to grant the rulemaking petition." American Horse Protection Assn. v. Lyng, 812 F.2d 1, 7 (D.C. Cir. 1987). Similarly, plaintiffs seek to rely on one additional NMFS Federal Register Notice (Pl. Ex. 28), which announces a recent emergency regulation to protect right whales from entanglement with fishing gear – thereby demonstrating that, when the agency deems it necessary, it is willing to impose immediate measures to protect right whales.

Finally, plaintiffs seek to rely on two Coast Guard Federal Register Notices that set forth the agency's establishment of several of the TSSs in right whale habitat. Pl. Exs. 12 and 13. These Notices are necessary for the Court to understand the steps the Coast Guard has taken to establish and maintain these TSSs, and thus the agency's responsibility to insure that these TSSs do not jeopardize the right whale or adversely modify right whale critical habitat. 16 U.S.C. § 1536(a)(2).

Accordingly, the Court should also consider plaintiffs' exhibits 8, 12, 13, and 26-28 in resolving plaintiffs' claims.

C.  **The Court Should Also Consider The Additional Documents Plaintiffs Have Identified.**

Plaintiffs request that the Court also consider the January 24, 2005 letter from the Marine Mammal Commission to NMFS requesting the very emergency regulations sought in plaintiffs' Rulemaking Petition. See Pl. Ex. 16. This document – which was plainly before NMFS when it received plaintiffs' Petition several months later – is highly relevant to NMF's claim that emergency regulations were not necessary, and thus should be considered by the Court.

Plaintiffs also seek to have the Court consider NMFS's July 1, 2005 response to this letter from the MMC, which identifies a deadline for the EIS process that has long since been missed.

8

Pl. Exh. 29. This record is relevant to NMFS's other defense of its decision to deny the Rulemaking Petition – i.e., that it will shortly be imposing permanent ship speed restrictions – since it shows how far off such regulations remain.

Moreover, this record was included in NMFS's original AR, but was subsequently removed. Compare NMFS AR (Mar. 31, 2006) with NMFS AR (May 2, 2006). It is well-established that an agency may not "cherry-pick" an Administrative Record by failing to include – let alone removing, as NMFS did here – a record that does not support its action. See, e.g., Heckler, 749 F.2d at 792; Envtl. Def. Fund v. Blum, 458 F. Supp. 650, 661 (D.D.C. 1978) (agency may not "skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question"). Accordingly, this record is also properly considered here.

The final document at issue here was one of the records the Coast Guard made available to plaintiffs after filing the AR, but then refused to agree could be included in the Record. Pl. Ex. 7. This document contains the results of a Survey concerning vessel usage of a TSS. Id. Although the existing Record demonstrates the relationship between the Coast Guard's TSSs and the presence of commercial vessels within TSS areas, this document further confirms that relationship, and is therefore also relevant to plaintiffs' claim against the Coast Guard.

Accordingly, the Court should also consider plaintiffs' exhibits 7, 16, and 29 in resolving plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs' motion to supplement the record, and consider these additional materials in resolving the parties' cross-motions for summary judgment. A proposed Order is attached.

                                      Respectfully submitted,

                                      _____/s/_____
                                      Howard M. Crystal
                                      (D.C. Bar No. 446189)
                                      Eric R. Glitzenstein
                                      (D.C. Bar. No. 358287)

                                      Meyer Glitzenstein & Crystal
                                      1601 Connecticut Ave., N.W.
                                      Suite 700
                                      Washington, D.C. 20009
                                      (202) 588-5206
                                      Of Counsel:

                                      Michael P. Senatore (D.C. Bar No. 453116)
                                      Andrew Hawley (Cal. Bar No. 229274)
                                      Defenders of Wildlife
                                      1130 Seventeenth Street, N.W.
                                      Washington, D.C. 20036

June 2, 2006                                  Attorneys for Plaintiffs

UNITED STATES UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Defenders of Wildlife, et al., ) | |
| ) | |
| Plaintiffs, ) | No. 05-2191 (PLF) |
| ) | |
| v. ) | |
| ) | |
| Carlos Gutierrez, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Upon consideration of plaintiffs' Motion to Supplement the Administrative Record, any opposition thereto, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further

ORDERED that, in resolving the parties' cross-motions for summary judgment in this action, the Court shall consider the documents submitted as exhibits to plaintiffs' summary judgment memorandum, including the scientific materials (plaintiffs' exhibits 6, 9, 10, 11, 14, 25, 30, 31, 32, and 33), the Federal Register Notices (plaintiffs' exhibits 8, 12, 13, 26, 27, and 28), and the other documents that are not included in the final Administrative Records defendants have produced in this action (plaintiffs' exhibits 7, 16, and 29).

_____
U.S. District Judge