# Meyer Glitzenstein & Crystal

1601 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Joshua R. Stebbins
Tanya M. Sanerib
Erin M. Tobin

Telephone (202) 588-5206
Fax (202) 588-5049
www.meyerglitz.com

April 12, 2006

**Via Email and U.S. Mail**
Bridget Kennedy McNeil
Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369

Re:   Defenders of Wildlife v. Gutierrez, No. 05-2191 (D.D.C.) (PLF)

Dear Bridget:

    Although we are still reviewing the Administrative Records (AR) defendants have recently produced, I am writing to raise some initial concerns regarding the NMFS Administrative Record. As we noted in our March 13, 2006 letter – and defendants have not disputed – it is absolutely clear in this Circuit that an AR must include "neither more nor less information than [was before] the agency when it made its decision." Water O. Boswell Hospital v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984). Thus, the AR must include "all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision." Amfac Resorts LLC v. Dept of Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (other citations omitted).

    Accordingly, as we also explained in our earlier letter, NMFS may not exclude from the AR emails, draft documents, and other records simply because those records may not have been specifically reviewed or relied on by the decision-maker. Fund for Animals v. Williams, 391 F. Supp. 2d 191, 196 (D.D.C. 2005) (AR "must include all documents that the agency directly or indirectly considered"). To the contrary, as the Court specifically explained in Fund For Animals, an agency may not "exclude information on the grounds that it did not 'rely' on the excluded information in its final decision." Id. at 197.

Bridget Kennedy McNeil
April 12, 2006
Page 2

Despite these principles, it appears that NMFS has excluded from its AR many records that must be included. While we will provide you with further information as we continue our review, we want to address several specific categories of missing records at this time.

First, we assume NMFS has deliberately excluded email communications. The Record contains the agency's June 2004 Advanced Notice of Proposed Rulemaking (ANPR) concerning ship strike regulations, the public comments on the ANPR, summaries of some public meetings, and several memoranda, but contains hardly any internal agency communications – particularly emails – about these regulations, or the timing for putting them into place. In fact, the AR contains a total of 3 emails (AR 9, 14 and 15).

Certainly defendants cannot take the position that no pertinent emails exist. To the contrary, based on our many years of experience with agency Administrative Records, we know that NMFS' officials must have exchanged many emails about the ANPR, the Rulemaking Petition, and, more generally, whether and when to impose the ship strike regulations addressed in both. Indeed, even with regard to documents that were included – such as a Report on Stakeholders Meetings (AR 21); a small amount of Congressional correspondence (AR 1, 19, 20); the EIS project schedule (AR 18); and the decision on the Rulemaking Petition (AR 6) – there must be a great many additional records, including emails among NMFS officials, to and from Congressional staff, and to and from other agencies and members of the public.

Since additional email communications on these issues must exist, we presume that NMFS has chosen to exclude them based on its "Guidelines for Agency Administrative Records" ("NMFS Guidelines"), which state that "Emails should not be included in an AR." Id. at 8. However, as we also noted in our earlier letter, these Guidelines have been rejected by the one Court that has thus far considered them. Coastal Conservation Assn v. Gutierrez, No. H-05-1214 (S.D. Tex. Feb. 17, 2006) (AR must include all "documents and records directly or indirectly considered by Defendants in making the decisions made [ ], including evidence and material that may be contrary to such decisions"). Therefore, since you rejected as "premature" our prior request that, rather than following NMFS improper "Guidelines," the agency prepare an AR for this case that complies with the APA and Circuit precedent, now that we have received the AR we once again ask that NMFS prepare a proper and complete Record that actually includes all the records that were before NMFS related to whether to grant or deny the Rulemaking Petition, which plainly must include all the email communications on this issue.

Second, in addition to emails, there are many additional agency records addressing the key substantive and timing matters regarding the ship strike regulations that have not been included in the AR. To give just a few examples, NMFS has been involved in numerous right whale ship strike workshops and other meetings involving the development of ship strike

Bridget Kennedy McNeil
April 12, 2006
Page 3

regulations, and the timing for these regulations.[1] The reports, minutes and other records from these meetings and presentations are properly part of the AR. Along the same lines, these matters have also been addressed in meetings of the Interagency Ship Strike Task Force. Yet, no materials from these meetings have been put in the AR here. As these examples show, there are a host of agency records that address NMFS' plans concerning both the substance, and, equally critically, the timing for ship strike regulations that have not yet been included in the AR, and that should be added.

In addition, the AR NMFS has provided includes no drafts of any records, including the letter and Notice denying the Rulemaking Petition, or other memoranda. The Coast Guard, by contrast, has included a host of draft documents, which, like emails, are plainly records that may "influence[ ] the agency's decision . . . ." Amfac Resorts LLC, 143 F. Supp. 2d at 12. Accordingly, these materials should be added as well.

Certainly, contrary to the NMFS Guidelines, the agency cannot refuse to include these or other materials in the AR on the grounds that they are privileged. The entire purpose of a Court's review of the AR is to discern whether an agency, in making a challenged decision, "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation of its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 43. (1983). Deliberative materials – which in all events were plainly "before the agency" in making its decision – are central to this inquiry. See, e.g., Defenders of Wildlife v. Norton, 239 F. Supp. 2d 9, 21, n.10 (D.D.C. 2002) (explaining that materials previously withheld based on the "deliberative process privilege . . . should have been included in the original" AR).

Moreover, even assuming that NMFS were to seek to withhold AR materials on privilege grounds, at a bare minimum the agency would have to identify the records, and prepare a Privilege Log that informs the Court and the plaintiffs as to the basis on which each record is being withheld – as NMFS has done with certain records withheld on attorney-client privilege grounds. Cf. Summers v. Department of Justice, 140 F.3d 1077, 1080-1081 (D.C. Cir. 1998) (detailing this requirement for deliberative-process withholdings in the FOIA context). Yet, to date, NMFS has not even taken this basic step.

It is also absolutely clear that an agency may not cherry-pick an AR by including emails or other communications it believes aid its position, and excluding other "pertinent but

---

[1] These include, *inter alia*, the April 2001 Right Whale Ship Strike Workshop in New London, Conn.; a Spring 2004 presentation by Greg Silber before the Stellwagen Bank Advisory Council; and meetings of the Northeast Implementation Team.

Bridget Kennedy McNeil
April 12, 2006
Page 4

unfavorable information." Fund for Animals, 391 F. Supp. 2d at 197. Thus, for example, while the agency ultimately decided to deny the Petition, and, in doing so, it may have decided to ignore contrary recommendations from agency scientists or other officials, the AR must include all of the emails and other communications from these officials, regardless of what they recommended. Norton, 239 F. Supp. 2d at 21, n.10, citing Boswell Hosp., 749 F.2d at 793.

  Finally, the AR NMFS has provided also does not contain all of the basic scientific and factual data that substantiate the need for further regulatory measures to protect right whales from ship strikes. These and similar materials should be added to the AR. Alternatively, plaintiffs are willing not to insist that they be added, if defendants will not object to plaintiffs referring to this kind of background material – and submitting copies to the Court – in the summary judgment briefs. Indeed, the bulk of this material is available on NMFS' web sites. See, e.g., *www.nero.noaa.gov/shipstrike/* and *www.nmfs.noaa.gov/pr/shipstrike/*. Thus, assuming that defendants do not object to plaintiffs using such background materials, including materials from these or other NMFS sites – e.g., the Right Whale Recovery Plan, the Large Whale Ship Strike Database, and other materials, such as studies on the NMFS "*ship strike-related research*" and "*policy documents and white papers*" web pages[2] – plaintiffs would not insist that these materials be added to the Record. Moreover, since it is appropriate for a reviewing Court to review this type of background material regardless of whether it is part of the AR, such an approach would save defendants from adding this material at this time, while preserving plaintiffs' right to use scientific and factual materials such as these to help the Court to understand the basis for plaintiffs' Rulemaking Petition. See, e.g., Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989).

  As I said at the outset, our review of the AR is continuing, and we will apprise you of any additional concerns shortly. In the meantime, please get back to us within a week concerning the issues raised here, so we can inform the Court by the April 21st deadline whether the parties will be able to resolve these issues without the Court's involvement.

  We look forward to hearing from you.

Sincerely,

Howard M. Crystal

---

  [2] *www.nero.noaa.gov/shipstrike/doc/Publications%20and%20Research.htm*; *www.nero.noaa.gov/shipstrike/doc/Policy%20documents.htm*. Other similar materials that fall into this category, even though they may not be on NMFS' sites, include (1) Laist, D.W., A.R. Knowlton, J.G. Mead, A.S. Collet, and M. Podesta. 2001 Collisions between ships and whales. Marine Mammal Science 17(1): 35-75 and (2) Moore, MJ, AR Knowlton, SD Kraus, WA McLellan, and RK Bonde. 2004. Morphomentry, gross morphology and available histopathology in North Atlantic right whale (Eubalaena glacialis) mortalities (1970-2002). J. Cetacean Res. Manage. 6(3):199-214.