UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Defenders of Wildlife, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No.  05-2191 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| Carlos Gutierrez, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Although the reasons for their objections are not entirely clear, Defendants have opposed Plaintiffs' motion requesting that, in resolving the parties' cross-motions for summary judgment, the Court consider specific Records that neither the National Marine Fisheries Service ("NMFS") nor the United States Coast Guard ("Coast Guard") included in their Administrative Records ("AR").  See Defendants' Opposition to Plaintiffs' Motion to Supplement ("Def. Opp.") at 5-10. However, since these records were either "before" the agencies, or, alternatively, fall within one of the exceptions permitting a Court to look beyond the AR, Plaintiffs' motion should be granted.

**ARGUMENT**

A.   **The Court Should Consider The Extra-Record Materials Plaintiffs Have Relied On To Support Their Claim Against NMFS.**

Plaintiffs' principal Claim against NMFS challenges that agency's September 2005 denial of Plaintiffs' Rulemaking Petition seeking emergency marine vessel speed limits in important right whale habitat.  Amended Complaint, ¶ 76.  In support of that Claim, Plaintiffs have asked the Court to consider several scientific studies and other NMFS-generated background materials

(Pl. Sum. Jud. Exs. 6, 9-11, 14, 25, 30-33); several Federal Register notices (Pl. Sum. Jud. Exs. 8, 26-28); and an exchange of letters between NMFS and the Marine Mammal Commission (Pl. Sum. Jud. Exs. 16 and 29).

In their opening motion, Plaintiffs explained that these materials were "before the agency" when it denied the Rulemaking Petition, since they were either written or received by NMFS, are on NMFS websites, or, in some cases, are well-recognized scientific studies. Plaintiffs' Motion to Supplement ("Pl. Mot.") at 6.  Defendants' principal response to this argument is that, irrespective of NMFS's authorship or possession of these materials, none of them was actually considered by NMFS in making its decision, and therefore should not be considered by the Court.  Def. Opp. at 5-10.[1]

However, this position entirely overlooks the well-recognized exceptions to the general rule limiting review to the AR, which provide that, under certain circumstances, a Court may – and should – consider materials that were not considered by the agency in making its decision. Because several of the exceptions are implicated here, the Court should consider these Records,

---

[1] On the other hand, NMFS asserts that these same materials have been considered "with respect to the broader issue of how to shape further measures to protect right whales," Def. Opp. at 8, n.3, which suggests that NMFS recognizes their importance to Plaintiff's Claim. Indeed, four of the Studies NMFS is asking the Court to ignore here were specifically identified by NMFS in today's Federal Register notice of Proposed Regulations for vessel speed limits in right whale habitat.  See 71 Fed. Reg. 36,299, 36,307 (June 26, 2006) (identifying Pl. Sum. Jud. Exs. 10, 14, 25, and 31).

It also bears noting that while today's Proposed Regulations are an important step toward implementing these speed limits, it does not resolve Plaintiffs' Claim against NMFS, which requests that these limits be imposed immediately.  Indeed, given that it took more than two years for NMFS to progress from its Advanced Notice of Proposed Rulemaking (NMFS AR 20) to these Proposed Regulations, it is likely to still be years before the Proposed Regulations yield on-the-ground protection for right whales – assuming NMFS ultimately promulgates Final Regulations at all.

even assuming arguendo that, as NMFS claims, it actually did not consider them in making its decision to deny the Rulemaking Petition.[2]

In particular, it is well-recognized that a Court may "supplement the record with 'background information' in order to determine whether the agency considered all the relevant factors." James Madison Ltd., By Hecht v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996); Humane Society of the United States v. Department of Commerce ("HSUS"), No. 05-1392, _ F. Supp. 2d _, 2006 WL 1453052 (D.D.C. May 26, 2006). Thus, for example, in HSUS, Judge Huvelle recently permitted the AR to be supplemented with a letter from the NMFS Administrator that had a "direct bearing on the correctness of the agency's decision," even though the agency claimed the letter was not part of its decision-making. Id. at *7-8. Similarly, since the scientific studies Plaintiffs have submitted to the Court (Pl. Sum. Jud. Exs. 6, 9-11, 14, 25, 30-33) provide background information concerning the highly precarious status of the North Atlantic right whale; the role of ship strikes in significantly exacerbating the crisis facing the species; and critical need for the emergency regulations Plaintiffs seek to address this crisis, all of which also has a "direct bearing on the correctness of the agency's decision," the Court should consider those materials here.

---

[2]     Of course, given that these materials – including, *inter alia,* NMFS's own white paper on "Large Vessel Ship Strikes Relative To Vessel Speed" (Pl. Sum. Jud. Ex. 6), "Collisions Between Ships And Whales" (id., Ex. 25), and "Recommended Measures To Reduce Ship Strikes of North Atlantic Right Whales" (id., Ex. 14) – are all on NMFS's own websites (see http://www.nero.noaa.gov/shipstrike/doc/Publications%20and%20Research.htm and http://www.nero.noaa.gov/shipstrike/doc/Policy%20documents.htm), if, as NMFS now claims, the agency affirmatively ignored these materials in making their decision, then that would be an additional reason for the Court to conclude that the agency's decision was arbitrary and capricious – and the Court should consider them for precisely this inquiry.

Defendants' alternative suggestion that the Court should not consider these scientific documents because NMFS does not dispute the crisis facing right whales is also off the mark. Def. Opp. at 5 ("NMFS' action was not based on a denial of the need for proposals of further measures"); id. at 8 ("the general science concerning the right whales is not in dispute"); id. at 9 ("[t]he validity of Plaintiffs' proposal was not the rationale for the denial"). While NMFS may agree that the speed restrictions Plaintiffs requested in their Rulemaking Petition are appropriate in general, the Court should consider these scientific studies and other materials – including several Reports prepared by NMFS itself (Pl. Sum. Jud. Ex. 6, 9, 30 and 32) – in order to evaluate the reasonableness of NMFS's conclusion that it need not impose these restrictions at this time in order to protect the species.

In short, the materials Plaintiffs have submitted demonstrate that these measures are needed now, in order to protect right whales from the ongoing threat of additional ship strikes, and thus that NMFS's rationale for denying the Petition is arbitrary and capricious in violation of the Administrative Procedure Act. 5 U.S.C. § 706. Thus, because they go to the heart of NMFS's rationale, it simply makes no sense to suggest that the Court must ignore these documents in resolving this Claim. See also, e.g., EDF v. Costle, 657 F.2d 275, 285 (D.C. Cir. 1981); Amfac Resorts L.L.C. v. Department of Interior, 143 F. Supp. 2d 7, 11 (D.D.C. 2001).[3]

Along the same lines, it is also well-accepted that a Court may consider extra-Record materials such as these where the Court "needs more evidence to enable it to understand the

---

[3] Indeed, Plaintiffs are asking the Court to consider these studies in precisely the same manner that Defendants had previously suggested that they had no objection to their use – i.e., as "background information," Ludwig, 82 F.3d at 1095. See Def. Apr. 17, 2006 Letter at 2 (Pl. Att. 4) (NMFS "does not object to [plaintiffs'] use of materials posted on any NMFS web site").

issues clearly . . ..” Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989). Again, in this case, were the Court to confine itself to NMFS's meager AR in resolving Plaintiffs' Claim against that agency, it would not have before it all the information critical to a complete understanding of the need for the immediate regulations Plaintiffs are seeking.[4]

Defendants' position with regard to NMFS's Federal Register Notices (Pl. Exhs. 26-28) is equally spurious. Def. Opp. at 9. Of course, Plaintiffs do not contend that, in denying the Rulemaking Petition, NMFS considered its other Rulemaking Petition decisions. Instead, Plaintiffs have submitted these documents to demonstrate the incongruity between NMFS's claim that it denied the Petition because imposing emergency regulations would deny an opportunity for prior public comment, and the manner in which it has responded to other Petitions for Rulemaking – where the agency has both sought public comment (including petitions for emergency regulations), and acted without a prior comment period.

Since it is entirely appropriate for a Court to consider these kinds of arguments in resolving an APA claim, Defendants' argument that the Court should ignore the Federal Register notices here is also without merit. See e.g., Teva Pharm., Inc. v. F.D.A., 182 F.3d 1003, 1004 (D.C. Cir. 1999) ("Because we conclude that the FDA's refusal was arbitrary and capricious inasmuch as the FDA has taken an inconsistent position in another case and failed to explain adequately the inconsistency, we reverse and remand . . ."); Graphic Comms. Int'l Union, Local

---

[4] To be sure, Plaintiffs are not contending that they cannot prevail in their Claim against NMFS without the Court considering these additional materials. However, the Court can – and should – consider them to resolve this Claim, and these materials further reinforce that, in light of the species' dire status, NMFS's rationale for denying the Rulemaking Petition flies in the face of its affirmative conservation obligations under the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(1), and the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361, et seq.

554 v. Salem-Gravure Div. of World Color Press, Inc., 843 F.2d 1490, 1493 (D.C. Cir. 1988) (explaining that agency action may be "arbitrary and capricious" where it "departs from established precedent" – which requires an inquiry into other agency decisions).  Indeed, it is not even clear that NMFS opposes the use of these materials for this purpose.  See Def. Opp. at 9 ("Plaintiffs may wish to relief upon these four Federal Register notices to support their argument on the merits of their case").[5]

**B.     The Court Should Also Consider The Extra-Record Materials Plaintiffs Have Relied On To Support Their Claim Against the Coast Guard.**

Plaintiffs' principal Claim against the Coast Guard concerns that agency's failure to undertake consultation with NMFS, under Section 7 of the Endangered Species Act, 16 U.S.C. § 1536(a)(2), concerning the impacts of the Coast Guard's TSSs on right whales.  See Amended Complaint, ¶ 79.  As Plaintiffs explained in their motion, and Defendants have ignored, it is customary when resolving such a failure to act claim for a reviewing Court to consider information that the "agency should have, but did not, consider."  Pl. Mot. at 6, n.3, citing Yeutter, 876 F.2d at 991.  Thus, as the Court explained in Yeutter, a reviewing Court may look beyond the AR "in cases where agencies are sued for a failure to take action . . . ."  Id.

---

[5]     NMFS similarly does not appear to object to the Court's consideration of the correspondence between NMFS and the Marine Mammal Commission – presumably because NMFS previously included some of this correspondence in the original NMFS AR.  Def. Opp. at 10, n. 5 (stating that NMFS "does not vigorously object" to the Court's considering Plaintiffs' exhibits 16 and 29); see also Pl. Mot. at 8-9 (explaining these records).

Plaintiffs are not asking the Court to consider Plaintiffs' Exhibits 7, 12, or 13, each of which concern the Coast Guards' Traffic Separation Schemes ("TSSs"), in connection with Plaintiffs' Claim against NMFS.

Applying that legal principle here, the Court plainly may consider all of the exhibits Plaintiffs have proffered in resolving whether the Coast Guard's failure to engage in Section 7 consultation concerning its TSSs complies with the ESA. Indeed, contrary to Defendants' claim, the Coast Guard AR is plainly "so inadequate as to frustrate judicial review," Def. Opp. at 10, since it does not include any of the underlying scientific materials concerning the impacts of ship strikes on right whales, and also does not contain all of the records necessary to delineate the Coast Guards' existing TSSs in right whale habitat. See Pl. Exs. 12 and 13 (discussing existing TSSs and their development).

Thus, just as, in a NEPA case, a reviewing court will consider extra-record information in order to determine whether a project may have significant environmental impacts (thereby requiring an Environmental Impact Statement ("EIS")), in a claim seeking Section 7 consultation it is entirely appropriate for the Court to consider similar extra-record materials. Yeutter, 876 F.2d at 991 (explaining that extra-record materials may be considered "in cases arising under the National Environmental Policy Act"). Indeed, since such claims arise in situations where agencies have failed to consider the impacts of their activities, and thus where the relief Plaintiffs seek is to force the agency to consider these impacts in the first instance (in an EIS under NEPA, or a Bi-Op under the ESA), it would make no sense to confine the Court's review to the AR, which, again, will not – and here does not – contain the information demonstrating that those impacts exist. See Friends of the Earth v. U.S Army Corps. of Eng'rs, 109 F. Supp. 2d 30, 34 (D.D.C. 2000) (court "allowed plaintiffs to supplement the record on the basis of plaintiffs' representation that additional evidence was needed to identify those impacts that were not considered by the Corps at all and therefore were not reflected in the record"); County of Suffolk

v. Secretary of the Interior, 562 F.2d 1368, 1384 (2d Cir. 1977) ("[I]n NEPA cases, by contrast, a primary function of the court is to insure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives . . .which can sometimes be determined only by looking outside the administrative record to see what the agency may have ignored")(emphasis added); see also Fund for Animals v. Williams, 391 F. Supp. 2d 191, 199 (D.D.C. 2005).

Accordingly, in resolving Plaintiffs' Claim against the Coast Guard, the Court should consider both the scientific studies, and the additional Coast Guard Federal Register Notices Plaintiffs have submitted (Pl. Exs. 12 and 13), which concern the origins of the Coast Guard's TSSs. The Court should also consider NMFS's Critical Habitat regulation, which explains the importance of certain habitat areas to right whales – including areas through which the Boston TSS passes. See Pl. Sum. Jud. Ex. 8.

Finally, Plaintiffs have asked the Court to consider a Coast Guard survey concerning vessel use of Coast Guard TSSs. Pl. Sum. Jud. Ex. 7. In response, the Coast Guard argues that the AR already demonstrates that the Coast Guard's TSSs cause commercial vessels to travel through right whale habitat, and thus that this additional record is not necessary. Def. Opp. at 10. As long as the Coast Guard takes no contrary position during the merits briefing, Plaintiffs do not object to the Court not considering this particular document based on this rationale. On the other hand, should the Coast Guard take a different position during briefing, Plaintiffs reserve the right to renew its request that the Court consider this additional document.[6]

---

[6] As for the photographs (Pl. Sum. Jud. Exs. 1 and 2), Plaintiffs did not address them in their motion because they are not asking the Court to actually consider them as evidence in resolving Plaintiffs' Claims, but rather have provided them simply to show the Court what the

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion, and consider these additional materials in resolving the parties' cross-motions for summary judgment.

Respectfully submitted,

_____/s/_____
Howard M. Crystal
(D.C. Bar No. 446189)
Eric R. Glitzenstein
(D.C. Bar. No. 358287)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206
Of Counsel:

Michael P. Senatore (D.C. Bar No. 453116)
Andrew Hawley (Cal. Bar No. 229274)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036

June 26, 2006                                    Attorneys for Plaintiffs

---

species looks like, before and after a ship strike. See Def. Mem. at 5-7. However, Defendants' assertion that Plaintiffs failed to provide any evidence that the whales pictured in Exhibit 2 – which shows several right whales with enormous gashes from ship strikes – had suffered injuries "consistent with a ship strike," rather than some other cause, "such as disease," is remarkable not only for the suggestion that whales sliced in this manner could be the victims of disease, but also because, in fact, Plaintiffs' declarant Regina Asmuthis specifically described these two photographs in her declaration, see Pl. Sum. Jud. Ex. 21, ¶ 4, as well as the injuries these whales suffered – injuries that are self-evident from even a cursory review of the photographs.