Plaintiffs' Exhibit 35
Defenders of Wildlife v. Gutierrez
No. 05-2191 (PLF) (D.D.C.)

(d) *Regulations.* The general regulations in 33 CFR part 165 subpart D, apply to any vessel or person in the navigable waters of the United States to which this section applies. No person or vessel may enter the security zone established in this section unless authorized by the Captain of the Port or his designated representatives. Vessels and persons granted permission to enter the security zone shall obey all lawful orders or directions of the Captain of the Port or his designated representatives. All vessels entering or moving within the security zone must operate at speeds which are necessary to maintain a safe course and which will not exceed 12 knots.

(e) *Enforcement.* Any Coast Guard commissioned, warrant or petty officer may enforce the rules in this section. In the navigable waters of the United States to which this section applies, when immediate action is required and representatives of the Coast Guard are not present or not present in sufficient force to provide effective enforcement of this section, any Federal Law Enforcement Officer or Michigan Law Enforcement Officer may enforce the rules contained in this section pursuant to 33 CFR § 6.04–11. In addition, the Captain of the Port may be assisted by other federal, state or local agencies in enforcing this section pursuant to 33 CFR 6.04–11.

(f) *Exemption.* Public vessels as defined in paragraph (a) of this section are exempt from the requirements in this section.

(g) *Waiver.* For any vessel, the Captain of the Port Sault Ste. Marie may waive any of the requirements of this section, upon finding that operational conditions or other circumstances are such that application of this section is unnecessary or impractical for the purpose of port security, safety or environmental safety.

(h) *Enforcement period.* This rule will be in enforced Labor Day of each year; 6 a.m. to 11:59 p.m.

Dated: May 2, 2006.

**E.Q. Kahler,**

*Captain, U.S. Coast Guard, Captain of the Port, Sault Ste. Marie.*

[FR Doc. E6–7862 Filed 5–23–06; 8:45 am]

**BILLING CODE 4910–15–P**

# DEPARTMENT OF HOMELAND SECURITY

## Coast Guard

### 33 CFR Part 167

[USCG–2005–20380]

**Port Access Routes Study of Potential Vessel Routing Measures to Reduce Vessel Strikes of North Atlantic Right Whales**

**AGENCY:** Coast Guard, DHS.

**ACTION:** Notice of study results; request for comments.

---

**SUMMARY:** The Coast Guard announces the completion of a Port Access Route Study that analyzed potential vessel routing measures and considered adjusting existing vessel routing measures in order to help reduce the risk of vessel strikes of the highly endangered North Atlantic right whale. The study focused on the northern region off the Atlantic Coast which included Cape Cod Bay, the area off Race Point at the northern end of Cape Cod (Race Point) and the Great South Channel; and in the southern region which included areas along the seacoast in the approaches to the Ports of Jacksonville and Fernandina Beach, Florida, and Brunswick, Georgia. This notice summarizes the study's recommendations. Comments on these recommendations are requested.

**DATES:** Comments and related material must reach the Docket Management Facility on or before June 5, 2006.

**ADDRESSES:** Comments and material received from the public, as well as the actual study and other documents mentioned in this notice, are part of docket USCG–2005–20380 and are available for inspection or copying at the Docket Management Facility, U.S. Department of Transportation, room PL–401, 400 Seventh Street SW., Washington, DC, 20590–0001, between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays. You may also find this docket on the Internet at *http://dms.dot.gov.*

You may submit comments identified by Coast Guard docket number USCG–2005–20380 to the Docket Management Facility at the U.S. Department of Transportation. To avoid duplication, please use only one of the following methods:

(1) Web site: *http://dms.dot.gov.*

(2) Mail: Docket Management Facility, U.S. Department of Transportation, 400 Seventh Street SW., Washington, DC 20590–0001.

(3) Fax: 202–493–2251.

(4) Delivery: Room PL–401 on the Plaza level of the Nassif Building, 400 Seventh Street SW., Washington, DC, between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays. The telephone number is 202–366–9329.

(5) Federal eRulemaking Portal: *http://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** If you have questions on this notice of study results, call George Detweiler, Office of Navigation Systems, Coast Guard, telephone 202–267–0574, or send e-mail to *Gdetweiler@comdt.uscg.mil.* If you have questions on viewing or submitting material to the docket, call Renee V. Wright, Program Manager, Docket Operations, telephone 202–493–0402–0271.

**SUPPLEMENTARY INFORMATION:** You may obtain a copy of the Port Access Route Study by contacting either person listed under the **FOR FURTHER INFORMATION CONTACT** section. A copy is also available in the public docket at the address listed under the **ADDRESSES** section and electronically on the DMS Web Site at *http://dms.dot.gov.*

**Public Participation and Request for Comments**

We encourage you to comment on the study and its recommendations by submitting comments and related materials. All comments received will be posted, without change, to *http://dms.dot.gov* and will include any personal information you have provided. We have an agreement with the Department of Transportation (DOT) to use the Docket Management Facility. Please see DOT's "Privacy Act" paragraph below.

*Submitting comments:* If you submit a comment, please include your name and address, identify the docket number for this notice of study (USCG–2005–20380), indicate the specific section of this document to which each comment applies, and give the reason for each comment. You may submit your comments and material by electronic means, mail, fax, or delivery to the Docket Management Facility at the address under **ADDRESSES**; but please submit your comments and material by only one means. If you submit them by mail or delivery, submit them in an unbound format, no larger than 8½ by 11 inches, suitable for copying and electronic filing. If you submit them by mail and would like to know that they reached the Facility, please enclose a stamped, self-addressed postcard or envelope. We will consider all

comments and material received during the comment period.

*Viewing comments and documents:* To view comments, as well as documents mentioned in this preamble as being available in the docket, go to *http://dms.dot.gov* at any time and conduct a simple search using the docket number. You may also visit the Docket Management Facility in room PL–401 on the Plaza level of the Nassif Building, 400 Seventh Street SW., Washington, DC, between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays.

*Privacy Act:* Anyone can search the electronic form of all comments received into any of our dockets by the name of the individual submitting the comment (or signing the comment, if submitted on behalf of an association, business, labor union, etc.). You may review the Department of Transportation's Privacy Act Statement in the **Federal Register** published on April 11, 2000 (65 FR 19477), or you may visit *http://dms.dot.gov.*

**Definitions**

The following definitions are from the International Maritime Organization's (IMO's) publication "Ships' Routeing" and should help you review this notice:

*Area to be avoided* or *ATBA* means a routing measure comprising an area within defined limits in which either navigation is particularly hazardous or it is exceptionally important to avoid casualties and which should be avoided by all vessels, or certain classes of vessels.

*Precautionary area* means a routing measure comprising an area within defined limits where vessels must navigate with particular caution and within which the direction of traffic flow may be recommended.

*Recommended route* means a route of undefined width, for the convenience of vessels in transit, which is often marked by centerline buoys.

*Recommended track* is a route which has been specially examined to ensure so far as possible that it is free of dangers and along which vessels are advised to navigate.

*Separation Zone* or *separation line* means a zone or line separating the traffic lanes in which vessels are proceeding in opposite or nearly opposite directions; or from the adjacent sea area; or separating traffic lanes designated for particular classes of vessels proceeding in the same direction.

*Traffic lane* means an area within defined limits in which one-way traffic is established. Natural obstacles, including those forming separation zones, may constitute a boundary.

*Traffic Separation Scheme* or *TSS* means a routing measure aimed at the separation of opposing streams of traffic by appropriate means and by the establishment of traffic lanes.

*Two-way route* means a route within defined limits inside which two-way traffic is established, aimed at providing safe passage of ships through waters where navigation is difficult or dangerous.

*Vessel routing system* means any system of one or more routes or routing measures aimed at reducing the risk of casualties; it includes traffic separation schemes, two-way routes, recommended tracks, areas to be avoided, no anchoring areas, inshore traffic zones, roundabouts, precautionary areas, and deep-water routes.

**Background and Purpose**

*When did the Coast Guard conduct this Port Access Route Study (PARS)?*

We conducted this PARS following our announcement of the PARS in a notice published in the **Federal Register** on February 18, 2005, (70 FR 8312). This notice had a comment submission deadline of April 19, 2005.

*What is the study area?*

The study area encompassed the two regions described as follows:
  1. *Northern region:* Cape Cod Bay; the area off Race Point at the northern end of Cape Cod (Race Point) and the Great South Channel.
  2. *Southern region:* The area bounded to the north by a line drawn at latitude 31°27′ N (which coincides with the northernmost boundary of the mandatory ship reporting system) and to the south by a line drawn at latitude line 29°45′ N. The eastern offshore boundary is formed by a line drawn at longitude 81°00′ W and the western boundary is formed by the shoreline. Included in this area are the ports of Jacksonville and Fernandina, FL, and Brunswick, GA.

*Why did the Coast Guard conduct this PARS?*

The National Marine Fisheries Service (NMFS) of the National Oceanic and Atmospheric Administration (NOAA) published an advance notice of proposed rulemaking (NMFS ANPRM) (69 FR 30857, June 1, 2004) in the **Federal Register**, which announced that it is considering regulations to implement a strategy to reduce ship strikes of right whales (Strategy). The goal of the Strategy is to assist in the recovery of the right whale by reducing the likelihood and threat of ship strikes.

Section 626 of the Coast Guard and Maritime Transportation Act of 2004 (the 2004 Act) (enacted August 9, 2004) mandates that the Coast Guard shall: (1) Cooperate with the National Oceanic and Atmospheric Administration in analyzing potential vessel routing measures for reducing vessel strikes of North Atlantic Right Whales, as described in the notice published at pages 30857 through 30861 of volume 69 of the **Federal Register**; and (2) provide a final report of the analysis to Congress within 18 months after the date of enactment of the Act.

The Coast Guard is charged with enforcing the Marine Mammal Protection Act (MMPA), the Endangered Species Act (ESA), and the regulations issued under those statutes. One of the Coast Guard's primary strategic goals is the protection of the marine environment, including the conservation of living marine resources and enforcement of living marine resource laws.

The Coast Guard works independently, and in collaboration with NMFS, to prevent ship strikes and promote right whale conservation. The Coast Guard issues local and written periodic notices to mariners concerning ship strikes, issues NAVTEX messages alerting mariners to the location of right whales, and actively participates in the Mandatory Ship Reporting (MSR) System that provides information to mariners entering right whale habitat. In addition, the Coast Guard provides patrols dedicated to enforcement of the ESA and the MMPA, provides limited vessel and aircraft support to facilitate right whale research and monitoring, and disseminates NMFS information packets to vessels boarded in or near right whale waters. As part of its Strategy development, and consistent with section 626 of the 2004 Act, NMFS asked the Coast Guard for assistance in its ship-strike rulemaking by conducting a Port Access Route Study (PARS).

*How did the Coast Guard conduct this PARS?*

During the course of a routine PARS, the Coast Guard would review port data, which would include vessel types, vessel traffic density, types of cargo, economic impacts, port improvements, vessel safety, and overall environmental impacts. In addition, the Coast Guard would review comments received on the PARS notice. Further, if meetings of any type were held, comments received at those meetings would also be considered.

In analyzing potential vessel routing measures for reducing vessel strikes of North Atlantic right whales, the Coast

Guard and NMFS agreed this PARS would be narrower in scope than a routine PARS because the Coast Guard did not consider economic impacts. Economic impacts are being considered by NMFS as part of an economic analysis it is conducting as part of the implementation of its Strategy. The Coast Guard analyzed ship transit data and reviewed research papers published and/or provided by NMFS. These papers discussed right whale habitat and migration patterns, and also analyzed ship transit data, including Mandatory Ship Reporting System data. Comments received on its PARS announcement in the **Federal Register** as well as comments NMFS received on its ANPRM were also reviewed by the Coast Guard.

### Study Recommendations

The PARS recommendations include the following:

1. Establish precautionary areas at the entrance to the ports of Jacksonville and Fernandina Beach, FL, and Brunswick, GA.

2. Establish six, two-way routes for the ports of Jacksonville and Fernandina Beach, FL, and Brunswick, GA.

3. Establish precautionary areas at the entrance to Cape Cod Canal and in the vicinity of New Inlet, MA.

4. Establish three, two-way routes in Cape Cod Bay to the ports of Boston and Provincetown, MA, and the entrance to Cape Cod Canal.

5. Establish a two-way recommended track from the Cape Cod Canal entrance to Provincetown, MA.

6. Realign and modify the location and size of the western portion of the TSS ''In the Approach to Boston, Massachusetts.''

### Next Steps

A brief synopsis of how the PARS recommendations will proceed towards implementation follows:

1. Changes to the TSS will be implemented through submission of a proposal by the United States to the International Maritime Organization (IMO). Upon IMO approval, adoption, and implementation, NOAA charts will be revised to reflect changes to the TSS and the Coast Guard will revise the list of TSSs at 33 CFR part 167.

2. The final locations of the precautionary areas, two-way routes, and the two-way recommended track will be determined and approved by the Coast Guard and NOAA. After approval they will be placed on the appropriate charts by NOAA. Notification of the establishment of these routing measures and their placement on applicable charts will be published in the appropriate Local Notice to Mariners.

3. Changes to aids to navigation resulting from the above actions will be accomplished through the following established procedures—notification of proposed changes in the Local Notice to Mariners with an opportunity for comment and notification of the final changes in the Local Notice to Mariners.

### Conclusion

We appreciate the comments we received concerning the PARS. We will provide opportunity for additional comments on any recommended changes to existing routing or operational measures listed in 33 CFR part 167 through notices published in the **Federal Register**.

Dated: May 15, 2006.

**Howard L. Hime,**
*Acting Director of Standards, Assistant Commandant for Prevention.*
[FR Doc. E6–7859 Filed 5–23–06; 8:45 am]
**BILLING CODE 4910–15–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Parts 52 and 81

[R04–OAR–2005–KY–0002–200531(b); FRL–8173–9]

### Approval and Promulgation of Implementation Plans; Kentucky; Redesignation of the Boyd County $SO_2$ Nonattainment Area

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Proposed rule.

**SUMMARY:** On May 13, 2005, and later clarified in a July 12, 2005, supplemental submittal, the Commonwealth of Kentucky submitted a request to redesignate the sulfur dioxide ($SO_2$) nonattainment area of Boyd County to attainment of the National Ambient Air Quality Standards (NAAQS) for $SO_2$. Boyd County is located within the Huntington-Ashland, West Virginia (WV)—Kentucky (KY)—Ohio (OH) Metropolitan Statistical Area (MSA), and the Boyd County $SO_2$ nonattainment area is comprised of the southern portion of Boyd County. The Commonwealth also submitted, as revisions to the Kentucky State Implementation Plan (SIP), a maintenance plan for the area and a source-specific SIP revision for the Calgon Carbon Corporation facility in Catlettsburg, Kentucky. EPA is proposing to approve the redesignation request for the Boyd County $SO_2$ nonattainment area and the maintenance plan for this area. The maintenance plan provides for the maintenance of the $SO_2$ NAAQS in Boyd County for the next ten years. EPA is also proposing to approve the source-specific SIP revision for the Calgon Carbon Corporation facility.

**DATES:** Comments must be received on or before June 23, 2006.

**ADDRESSES:** Comments may be mailed to Stacy DiFrank, Regulatory Development Section, Air Planning Branch, Air, Pesticides and Toxics Management Division, U.S. Environmental Protection Agency, Region 4, 61 Forsyth Street, SW., Atlanta, Georgia 30303–8960. Please follow the detailed instructions described in the direct final rule, **ADDRESSES** section which is published in the Rules Section of this **Federal Register**.

**FOR FURTHER INFORMATION CONTACT:** Stacy DiFrank, (404) 562–9042, or by electronic mail at *difrank.stacy@epa.gov*.

**SUPPLEMENTARY INFORMATION:** For additional information on the approval of Kentucky's redesignation request and maintenance plan for the Boyd County $SO_2$ nonattainment area, and source-specific SIP revision, please see the direct final rule which is published in the Rules Section of this **Federal Register**.

Dated: May 12, 2006.

**A. Stanley Meiburg,**
*Acting Regional Administrator, Region 4.*
[FR Doc. E6–7934 Filed 5–23–06; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 63

[EPA–HQ–OAR–2004–0441; FRL–8174–4]

**RIN 2060–AI66**

### National Emission Standards for the Printing and Publishing Industry

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Proposed rule.

**SUMMARY:** On May 30, 1996, EPA issued national emission standards for hazardous air pollutants (NESHAP) for the printing and publishing industry under section 112 of the Clean Air Act (CAA). We are proposing to amend the final rule to resolve issues and questions raised after promulgation of the final rule and to correct errors in the regulatory text. This action also proposes to amend the Paper and Other