Plaintiffs' Exhibit 39
Defenders of Wildlife v. Gutierrez
No. 05-2191 (PLF) (D.D.C.)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Defenders of Wildlife, et al.        )
                                     )     No. 05-2191 (PLF)
        v.                           )
                                     )
Carlos Gutierrez, et al.             )

# SECOND DECLARATION OF SHARON YOUNG

I, Sharon Young, declare as follows:

1. I am an employee and member of The Humane Society of the United States ("HSUS") and submitted an earlier declaration in support of plaintiffs' motion for summary judgment. I submit this declaration in support of plaintiffs' opposition to defendants' motion for summary judgment, and in further support of plaintiffs' motion for summary judgment.

2. Voluntary measures to reduce right whales ship strikes have proven insufficient to stem the ongoing decline of the species. For example, one study found that 38 of 40 vessels did not slow down or route around whales in areas in which they had been informed that right whales were present. The ineffectiveness of these voluntary measures is evidenced by the large number of right whales that continue to be struck in recent years.

3. After a five year delay, the National Marine Fisheries Service ("NMFS") recently issued Proposed Regulations to impose speed limits for certain marine vessels in right whale habitat. The comment period on the Proposed Regulations does not close until August 25, 2006. In light of the months it will take the NMFS to consider the comments, and clear the Regulations through the intra- and inter-agency review process that will occur prior to its publication as a final rule, and based on my experience, I do

not believe the final Regulations will go into effect for at least another year, if they ever do. As a result, right whales will continue to be at serious risk of collisions with marine vessels traveling at high speeds in their habitat during the next breeding and calving season.

4.      Given the right whale mortality rate over the past 30 months, this continued delay in implementing critically important measures to protect right whales is likely to result in at least several more right whale ship strikes, and deaths, in the coming year. In light of the species' seriously depleted numbers – including the ten documented deaths in little more than the past-two years alone – I am seriously concerned that this additional year's delay will unnecessarily hasten the species' decline and imperil its existence.

5.      The lack of speed limits during the upcoming winter months is of particular concern. Most of recent right whales ship strikes have occurred during the winter months, and therefore this is a time period when the species most needs the protections of reconfigured ship routes and lower speeds.

6.      These time periods are also critical because right whales are moving to their Southeastern calving grounds, and then calving beginning in the November-December timeframe. Then, as the Spring progresses right whales are migrating northward up the coast to their feeding grounds in the Northeast. Therefore, it is critical that speed restrictions for the coastal waters off the coast from Florida to Rhode Island be in place annually, starting this upcoming November 2006, until approximately April 2007 – the time of year requested in the Rulemaking Petition.

7.     In New England, right whales congregate in important feeding grounds in the Great South Channel, and also in Cape Cod Bay and off Race Point, beginning in the winter, and continuing until mid-Summer.  NMFS's proposed regulations do not even provide for speed restrictions for "off Race Point" until March 1, and in the Great South Channel until April 1.  This is not adequate given that, as NMFS acknowledges, right whales are in Cape Cod Bay starting in January, and the only way they can arrive in that area (absent a terrestrial crossing) is to traverse the area "off Race Point," and enter some portion of the area designated "Great South Channel."  Accordingly, speed restrictions are necessary for this entire area beginning in January, and extending to July 2007 – again, the time of year requested in the Rulemaking Petition.

8.     One of the other elements essential to reducing the risk of ship strikes is moving the Traffic Separation Scheme (TSS) running through the Great South Channel, across Stellwagen Bank National Marine Sanctuary and into the port of Boston.  Similarly, the establishment of routes into ports adjacent to right whale critical habitat in the Southeast is urgently needed.

9.     It is my understanding that before finalizing any changes to the Boston TSS, the Coast Guard is seeking the approval of the International Maritime Organization (IMO).  I have been told by NMFS staff that the proposal to shift the TSS has received approval from the key IMO committee necessary for this approval.

10.    Nonetheless, it is also my understanding that neither this routing change, nor a planned Area To Be Avoided in the Great South Channel, will be in effect during the time period that plaintiffs' are seeking emergency speed restrictions in this area – i.e., from approximately January to July 2006.  Thus, although this is one of the right whales'

3

highest use habitats, absent the speed restrictions sought in Plaintiffs' Petition, right whales will continue to be exposed to high-speed marine vessels traveling in the existing traffic lanes -- which sends vessels through significant portions of designated right whale critical habitat – during the upcoming year.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 4th day of August, 2006

Sharon B. Young