UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Defenders of Wildlife, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Carlos Gutierrez, et al., )<br>)<br>Defendants. )<br>) | No.  05-2191 (PLF) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' FILING CONCERNING
THE TIMING OF THE FINAL SHIP STRIKE RULE**

On October 25, 2006, the Court issued an Order directing the National Marine Fisheries Service ("NMFS"), "within 10 days of the date of this Order," to simply inform the Court "when the final rule" regarding ship speed restrictions to protect North Atlantic right whales from ship strikes "will issue."  Order of Oct. 25, 2006.  Fifteen days later, Defendants filed a Declaration that, rather than simply answering the Court's inquiry, seeks to justify NMFS's continuing delay in this Rulemaking with details concerning the agency's budget, and actions the agency maintains may adequately protect right whales until the ship strike rule is finally completed.  See Defendants' Response To The Court's Oct. 25, 2006 Order (Nov. 9, 2006) ("Def. Resp."), Declaration of Samuel D. Rauch ("Rauch Decl."), ¶¶ 9-10.  Presumably, Defendants believe that these details support NMFS's defense of Plaintiffs' Claim against the agency – which concerns Plaintiffs' Rulemaking Petition for *emergency* regulations to protect right whales from ship strikes until the permanent regulations can be finalized.

For several reasons, however, Defendants most recent filing reinforces not only the merits of Plaintiffs' Claim against NMFS, but the urgency of a ruling on that Claim as soon as practicable:

1.  Defendants assert that NMFS "will not take final action on the proposed rule *before* June 2007." Rauch Decl., ¶ 11.[1] This means that, absent an expeditious resolution of Plaintiffs' Claim against NMFS – which seeks a remand of the agency's refusal to impose *emergency* speed restrictions in right whale habitat – there is no prospect of those speed restrictions being imposed during this winter calving season, even though they were first recommended more than five years ago. On the other hand, if the Court were to remand the Petition to the agency for a rational explanation, and, as a result, if the agency were to grant the Petition and impose these emergency measures, right whales would have the benefit of protections that all the parties agree are critically necessary for the remainder of *this* calving season and beyond, until NMFS finalizes its permanent regulations. Indeed, in light of NMFS's inability to commit to a *firm* deadline for completing the rulemaking, it is entirely possible that the current timetable for permanent regulations will continue to slip well beyond next summer, in which case emergency regulations would become necessary for the *next* calving season as well.

2.  Contrary to NMFS's assertion, the agency's "other measures designed to protect North Atlantic right whales from collisions with vessels," Rauch Decl., ¶ 9, are wholly inadequate to provide the critical protections Plaintiffs have sought in their Rulemaking Petition.

---

[1] Defendants' Filing itself misleadingly states that "NMFS anticipates taking final action on the proposed rule *in* June 2007," see Def. Resp. at 2 (emphasis added), while, in fact, the Declaration cited for that proposition makes it clear that NMFS is simply committing that the process will not be completed "*before*" that date – and hence is leaving open the possibility that it may not be completed until well *after* that. Rauch Decl., ¶ 11.

Thus, while Defendants claim that new *voluntary* measures "will alleviate the threat to North Atlantic right whales from vessel strikes," id., in fact, as Plaintiffs have explained, and NMFS itself has previously recognized, such measures have simply proven incapable of adequately protecting right whales.  *See* Pl. Sum. Jud. Mem. at 15, *quoting* NMFS's Advance Notice of Proposed Rulemaking For Right Whale Ship Strike Reduction ("ANPR") (69 Fed. Reg. 30,857, 30,858 (2004))(NMFS AR 20, BN 468)("[d]espite [voluntary] efforts, right whales continue to be killed as a result of collisions with vessels").

As for the emergency gillnet regulations NMFS is putting in place this calving season, Rauch Decl., ¶ 9, while Plaintiffs strongly support this measure and commend NMFS for adopting it, it is simply not – as Defendants imply – a substitute for speed restrictions.  Id. (suggesting that NMFS is imposing the same "measures" this calving season as the proposed rule will implement "for future calving seasons").  To the contrary, the gillnet restrictions do *nothing* to protect right whales from the ongoing, concrete, and devastating effects of *ship strikes* – a threat that can only meaningfully be ameliorated with the speed restrictions that NMFS itself has now *proposed*, but does not intend to *impose* until well after at least another calving season.

Moreover, NMFS's issuance of emergency gillnet regulations concurrently with proposed *permanent* regulations on gillnet fishing further undermines the agency's defense of its refusal to impose emergency *speed* restrictions – i.e., that such an effort would "duplicate agency effort [and] risk delaying" permanent regulations, Def. Sum. Jud. Mem. at 22.  See 71 Fed. Reg. 66,469 (Nov. 15, 2006) (emergency gillnet regulations); 71 Fed. Reg. 66,482 (Nov. 15, 2006) (proposed gillnet regulations).  In short, Plaintiffs are asking the agency to do with speed restrictions *exactly* what it has just done with gillnet fishing – impose *emergency* regulations to protect the species

from this critical threat *until* such time as the permanent regulations can be finalized.  71 Fed. Reg. at 66,470 (explaining that while "NMFS is publishing a proposed rule" on which it "intends to ensure full public participation," it is *also* imposing emergency regulations "to ensure adequate protection for right whales, particularly mothers and calves during the calving season, from gillnet fishing in the calving areas that NMFS believes pose a significant risk to the well-being of right whales").

      3.      Finally, NMFS's description of its budgetary constraints, Rauch Decl., ¶ 10 – again, information the Court did not request in its October 25, 2006 Order – is neither relevant nor persuasive here.  As to relevance, while it is possible that, *once the Rulemaking Petition is remanded to the agency*, NMFS might, based on an Administrative Record ("AR") detailing these budgetary constraints, deny the Petition, the Court should not rely on Defendants' bald and unsubstantiated assertions to deny Plaintiffs the relief they seek, or to conclude that Plaintiffs are not even entitled to a *ruling* on their Claim.  Defendants must defend their denial of the Rulemaking Petition on the *existing* AR, not *post-hoc* rationalizations provided in response to a Court Order simply asking NMFS when it would complete its rulemaking.  *See, e.g.*, Gerber v. Norton, 294 F.3d 173, 180 (D.C. Cir. 2002).

    In any event, NMFS's plea concerning its budgetary constraints is also not persuasive.  There are no details regarding whether funding is available for this specific undertaking; the likelihood that the agency will continue to operate under a Continuing Resolution; or what other priorities are competing for agency resources.  Indeed, as Plaintiffs have explained – and Defendants have continued to ignore – if the agency were to pull resources from its *permanent* rulemaking process in order to issue *emergency* ship speed regulations, that reallocation of

resources, and any resultant delay in finalizing the permanent regulations, would not harm right whales *because the emergency speed restrictions could remain in place until the final regulations are completed*.[2]

*       *       *

In sum, none of the extra information provided in Defendants' Declaration demonstrates either that NMFS cannot issue emergency ship speed regulations, or that these regulations are no longer necessary. In addition, the response to the Court's *actual* inquiry demonstrates that a final ship strike rule is *at least* another calving season away, if not more. Accordingly, Plaintiffs urge the Court to remand the Rulemaking Petition to NMFS to either impose emergency speed restrictions, or, at the very least, finally provide a reasoned explanation – in the AR – for its failure to do so.

                                                                                                Respectfully submitted,

| Of Counsel: | /s/ |
|---|---|
| Michael P. Senatore (D.C. Bar No. 453116) | Howard M. Crystal (D.C. Bar No. 446189) |
| Andrew Hawley (Cal. Bar No. 229274) | Eric R. Glitzenstein (D.C. Bar. No. 358287) |
| Defenders of Wildlife | Meyer Glitzenstein & Crystal |
| 1130 Seventeenth Street, N.W. | 1601 Connecticut Ave., N.W., Suite 700 |
| Washington, D.C. 20036 | Washington, D.C. 20009 |
|  | (202) 588-5206 |
| November 15, 2006 | Attorneys for Plaintiffs |

---

[2]  Defendants also imply that developing the final regulations will take many months in part because the agency "has to respond to over 10,000 public comments received on its proposed rules . . . ." Def. Resp. at 1. However, since more than 95% of those comments "were *form letters* in support of the proposed rule," Rauch Decl., ¶ 4 (emphasis added), NMFS certainly cannot justify the *year* it will take to get from the proposed rule to a final rule on that basis either.

5