UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, THE HUMANE SOCIETY OF THE UNITED STATES, and THE OCEAN CONSERVANCY )<br><br>Plaintiffs, )<br><br>v. )<br><br>CARLOS GUTIERREZ, *et al.* )<br><br>Defendants. ) | Case No. 1:05CV02191 |

**OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT**

## **INTRODUCTION**

Plaintiffs seek wholesale reconsideration of the Court's dismissal of Count Two of their Amended Complaint, as set forth in Defenders of Wildlife v. Gutierrez, --- F.Supp.2d ----, 2007 WL 1004242 (D.D.C. April 5, 2007). Plaintiffs' Rule 59(e) motion centers on the court's incorporation of the 'final agency action' standard in its analysis of Plaintiffs' claim. Finality of the challenged traffic separation schemes ("TSSs") is not at issue.[1] Rather, the issue is whether the establishment of each challenged TSSs was an 'agency action' taken by the Coast Guard. Defendants explained that the Coast Guard did not establish these TSSs, but rather that each TSS was established through an international process initiated by the United States government's proposal to the International Maritime Organization ("IMO") to establish or amend a TSS. See Defs.' Mem. at 8-12, 35-39. Despite evidence in the administrative record, Plaintiffs disputed the process by which the challenged TSSs were in fact established, asserting under their theory of the case that the Coast Guard itself is required to establish TSSs under the Ports and Waterways Safety Act ("PWSA"), 33 U.S.C. §§ 1221 *et seq.* Evaluating these arguments, the Court correctly determined that

> it is clear from the record before the Court that, regardless of what authority the Coast Guard might have to create TSSs under the PWSA..., the Coast Guard did not in fact designate any of the TSSs at issue in this case. Rather, it appears that in each instance the United States made recommendations to the IMO, which the IMO adopted, sometimes after alteration or amendment.

Defenders of Wildlife, 2007 WL 1004242 at *9. Accordingly, the Court dismissed the claim against the Coast Guard because Plaintiffs failed to demonstrate that the Coast Guard engaged in any final

---

[1] There are six TSSs referenced in the Amended Complaint: (1) In the Approach to Boston; (2) In the Approaches to the Chesapeake Bay; (3) Off Delaware Bay; (4) Off New York; (5) In the Approaches to Narragansett Bay, R.I. and Buzzards Bay, Mass.; and (6) In the Approaches to Portland, Maine. See Am. Compl. ¶ 63. The TSS off Cape Fear is also discussed by the parties, although it is not in the complaint. See Pls.' Mem. at 15, 34; Defs.' Mem. at 36.

1

agency actions reviewable under the Administrative Procedure Act ("APA") Id. Attempting to reframe the issue, Plaintiffs assert that the Court committed clear legal error by incorporating the APA's 'final agency action' standard. Plaintiffs' arguments are misplaced. The Court correctly determined that the challenged TSSs were not agency actions of the Coast Guard. Nevertheless, as demonstrated below, the Court's incorporation of the 'final agency action' standard is in accordance with applicable law. Plaintiffs therefore fail to meet the heavy burden imposed by Rule 59(e) of demonstrating clear error.

As stated above, the central issue in this case was not whether the TSSs were final, or complete, for the purposes of judicial review, but whether the actions were actions of the Coast Guard or of the IMO. After failing to convince the Court that the TSSs were Coast Guard actions, Plaintiffs now try to reframe their argument to challenge other Coast Guard actions and claim that those activities are subject to consultation. Plaintiffs' new arguments can only hold together if the Court rejects the clear D.C. Circuit authority that incorporates the APA standard and scope of review into the realm of ESA citizen suits. After setting up the false premise that 'final agency action' is not required in ESA citizen suits, Plaintiffs proceed to rehash previous arguments that a variety of Coast Guard activities, from a PARS study to ministerial codification of TSSs or even more ministerial "Local Notices to Mariners" are the "agency action" upon which the Coast Guard is required to consult. Plaintiffs' moving target arguments ignore the fact that the Court ruled on Plaintiffs' claim, as presented in their complaint.

> While plaintiffs allege that the "Coast Guard has established numerous TSS in right whale habitat" and that the "Coast Guard's designation of shipping lanes concentrates vessels in areas used by right whales," Am. Compl. ¶¶ 63-64, these allegations are at odds with the evidence in the Administrative Record that shows quite clearly that in fact the TSSs at issue were created by an international organization, not by the Coast Guard.

Defenders of Wildlife, 2007 WL 1004242 at *9. The Court should not permit Plaintiffs to expand their case at this juncture by presenting argument on additional legal theories.

As demonstrated below, Plaintiffs simply have not "present[ed] new facts or a clear error of law which 'compel' a change in the court's ruling." New York v. United States, 880 F.Supp. 37, 39 (D.D.C. 1995).[2] This Court should deny their Rule 59(e) motion and affirm its judgment.

## STANDARD OF REVIEW

A motion pursuant to Rule 59(e) to alter or amend a judgment after its entry is rarely granted. Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). "'A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Ciralsky v. Central Intelligence Agency, 355 F.3d 661, 671 (D.C. Cir.2004) (quoting Firestone, 76 F.3d at 1208). Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Niedermeier v. Office of Baucus, 153 F. Supp. 2d 23, 28 (D.D.C.2001); New York, 880 F. Supp. at 38 (a Rule 59(e) motion is not an opportunity to reargue facts and theories upon which a court has already ruled.). Considerations of fairness and of judicial efficiency strongly disfavor motions for reconsideration where, as here, a party simply seeks "one more bite at the apple." See Medly v.

---

[2] As a remedy to their motion, Plaintiffs suggest that the Court could completely reverse itself and grant summary judgment in favor of Plaintiffs. Pls.' Br. at 5. Such a suggestion ignores the myriad additional defenses raised by the Coast Guard, which this Court did not reach. Defenders of Wildlife, 2007 WL 1004242 at *9, fn 8. Plaintiffs have not met the Rule 59(e) standard and the judgment should remain unchanged, but *assuming arguendo* that the Court were to reconsider its decision, any ruling in favor of Plaintiffs would involve not only a thorough reexamination of the "agency action" issue, but a thorough analysis of these defenses before any ruling for Plaintiffs would be appropriate.

Westpoint Stevens, Inc., 162 F.R.D. 697, 699 (M.D. Ala. 1995) (holding that the plaintiff should not be allowed to "reload and shoot again." (citing Butler v. Sentry Ins. A Mut. Co., 640 F. Supp. 806, 812 (N.D. Ill. 1986)). Rather, when a motion for reconsideration raises only a party's disagreement with a decision of the Court, that dispute "should be dealt with in the normal appellate process, not on a motion for reargument..." Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 163 (D.N.J.1988). Accordingly, courts should decline to reconsider decided issues in the absence of extraordinary circumstances.

**ARGUMENT**

A.  Plaintiffs' Rule 59(e) Motion Must Fail Because This Argument Was Already Advanced.

A motion to alter or amend a judgment "'is not simply an opportunity to reargue facts and theories on which a court has already ruled'" or "[to bring] before the court theories or arguments that were not advanced earlier.'" Harvey v. District of Columbia, 949 F. Supp. 878, 879 (D.D.C.1996) (citations omitted). Rule 59 motions "are not to be used to relitigate matters already argued and disposed of." Indep. Petroleum Ass'n of America v. Babbitt, 178 F.R.D. 323, 324 (D.D.C.1998) (citing United States v. Western Elec. Co., Inc., 690 F. Supp. 22, 25 (D.D.C.1988)). Despite these well-established admonishments, Plaintiffs' motion does exactly this. See Pls' Reply. at 24, n. 17 (arguing that APA 'final agency action' requirement does not apply to Plaintiffs' ESA 7(a)(2) claim discussions of 'final agency action'); see also Defs.' Mem. at 37-39; Defs.' Reply at 14-15. Because Plaintiffs' motion "transparently relitigates claims that this court has already expressly rejected," Uberoi v. E.E.O.C., 271 F.Supp.2d 1, 3 (D.D.C. 2002), it must be denied. Cf. Messina v. Krakower, 439 F.3d 755, 759 (D.C. Cir. 2006) (affirming denial of Rule 59(e) motion when party relied on same argument already made). Even if Plaintiffs respond that they would have

4

argued this issue differently, or more vigorously, Rule 59 motions "are not granted by the District Court where they are used by a losing party to request the trial judge to reopen proceedings in order to consider a new defensive theory which could have been raised during the original proceedings." Kattan by Thomas v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993).

B.   Plaintiffs Fail to Demonstrate Clear Legal Error.

While the true purpose of Plaintiffs' motion is to use the 'final agency action' argument as a jumping-off point for broadly rearguing their claim, Plaintiffs must first demonstrate that the Court committed clear legal error. Plaintiffs fail to discuss any binding precedent from the D.C. Circuit which would make this Court's application of the 'final agency action' requirement to Plaintiffs' claims a clear error. To the contrary, Plaintiffs seek to evade the D.C. Circuit case on point. Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8 (D.C. Cir. 2005). The D.C. Circuit clearly and unequivocally stated:

> The APA authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." There exists no statutory review provision in the ESA that authorizes judicial review of agency action beyond that provided for in the APA. Thus, an agency action must be final in order to be judicially reviewable.

Id. at 13 (footnote and citations omitted).[3] With respect to finality, APA section 704, 5 U.S.C. § 704, makes judicial review available for two categories of agency action: "[a]gency action made

---

[3] The District Court in Home Builders also directly addressed the issue, similarly concluding that even though subject-matter jurisdiction over the suit was provided by the ESA citizen-suit provision, the APA's finality requirements applied. 298 F. Supp. 2d 68, 79 n. 4 (D.D.C. 2003). Both the Circuit Court's and District Court's conclusions in Home Builders are firmly grounded in longstanding D.C. Circuit precedent. As the D.C. Circuit has noted, "[s]ubject matter jurisdiction is one thing. Ripeness, standing, justiciability and the like, all of which the district court invoked in dismissing the complaint, are quite another." Borg-Warner Protective Services Corp. v. EEOC, 245 F.3d 831, 834 (D.C. Cir. 2001).

5

reviewable by statute" and "final agency action for which there is no other adequate remedy in a court." While only the second category contains a reference to finality, the D.C. Circuit has long held that the APA's finality requirements apply equally to cases where judicial review is provided under another statute. Carter/Mondale Presidential Comm., Inc. v. FEC, 711 F.2d 279, 285 n.9 (D.C. Cir. 1983). Thus, despite Plaintiffs' attempt to distinguish Home Builders based on the subject-matter of the ESA claim, the D.C. Circuit made no such distinction. Indeed, the D.C. Circuit holding is rooted in the fact that, – whether, as here, section 1540(g)(1)(A), or as in Home Builders, section 1540(g)(1)(C), – there is no statutory review provision in the ESA that authorizes judicial review of agency action beyond that provided for in the APA, and the corollary principle that APA section 704 finality requirements apply equally even where agency action is made reviewable by another statute. Accordingly, this Court's decision is well within D.C. Circuit precedent and no legal error exists.

Even if Home Builders were entirely distinguishable, which it is not, Judge Robertson in this district has applied the "final agency action" requirement to ESA citizen-suit claims brought under 16 U.S.C. § 1540(g)(1)(A). In Caldera, the plaintiffs sought programmatic relief against the Army Corps of Engineers and the Federal Highway Administration, alleging, like here, that these agencies had failed to engage in ESA Section 7 consultation. Nat'l Wildlife Fed'n v. Caldera, No. 00-1031 (JR), 2002 WL 628649, at *4 (D.D.C. March 26, 2002). Despite the fact that some claims were pled under the ESA citizen-suit provision, as here, the Caldera court found that the bar against seeking programmatic, wholesale relief, stemming from the APA's 'final agency action' requirement, necessitated dismissal of the plaintiffs' entire complaint for lack of subject-matter jurisdiction. Id.

6

at *5.[4] Even though this decision approached 'final agency action' from a different angle, the conclusion that this APA standard applies to the ESA claim is relevant.

Plaintiffs' argument rests upon a Ninth Circuit opinion, Washington Toxics Coal. v. EPA, 413 F.3d 1024 (9th Cir. 2005), and a few district court cases from that same Circuit, for the proposition that the 'final agency action' requirement does not apply to claims brought pursuant to the ESA citizen-suit provision, 16 U.S.C. § 1540(g)(1)(A). This pronouncement is not binding upon this Court, and no district court outside of the Ninth Circuit has adopted this analysis.[5] Furthermore, this aspect of Washington Toxics is directly in conflict with the Tenth Circuit. See Gordon v. Norton, 322 F.3d 1213, 1219-22 (10th Cir. 2003) (dismissing claim brought pursuant to the ESA citizen-suit provision, 16 U.S.C. § 1540(g)(1)(A), on ripeness grounds due to failure to challenge a final agency action). Finally, the Washington Toxics holding is irrelevant to the central issue of whether a challenged action is 'agency action' rather than the action of a third party.

---

[4] The Caldera court dismissed the complaint without prejudice to a future "as applied" challenge to four of the challenged permits. Those plaintiffs later brought a challenge to four of those permits, pursuant to the ESA and other authorities, as set forth in Nat'l Wildlife Fed'n v. Brownlee, 402 F. Supp. 2d 1 (D.D.C. 2005). In Brownlee, the district court affirmed its earlier Caldera holding, id. at 4, and again applied the 'final agency action' to Plaintiffs' ESA citizen-suit claims. Id. at 5-7.

[5] In fact, prior to Washington Toxics, one district court in the Ninth Circuit had rejected such an analysis, holding that while "there appears to be some dispute regarding whether a suit filed under the citizen suit provision of the ESA requires a final agency action . . . the better-reasoned cases hold that the scope of judicial review over suits brought pursuant to the ESA's citizen suit provision must be in accordance with the APA." Defenders of Wildlife v. Flowers, No. 02-195-TUC-CKJ, 2003 WL 22143270, at *2 (D.Ariz. Aug. 18, 2003); *contra* Center For Biological Diversity v. U.S. Dept. of Housing and Urban Development, No. 05-261-TUC-CKJ, 2006 WL 3234591, at *3 (D.Ariz. May 12, 2006). Additionally, even in cases that have followed Washington Toxics, courts have still required a more traditional type of agency action, rather than permitting any agency activity to be challenged under ESA Section 7. See, e.g., Center for Food Safety v. Johanns, 451 F.Supp.2d 1165, 1190 (D.Haw. 2006)(rejecting claim that an agencies' internal policies and regulations constitute a "program" for ESA Section 7 purposes).

Accordingly, because this Court's decision fits squarely within Home Builders, and is in line with prior district court decisions in this Circuit, Plaintiffs fail to demonstrate that April 5, 2007 opinion is based upon clear error, as required by Fed.R.Civ.P. 59(e). Plaintiffs' reliance upon Ninth Circuit caselaw, which conflicts with both the D.C. and Tenth Circuits, is not enough to meet this standard, and Plaintiffs' motion must be denied. Most importantly, Plaintiffs' arguments about the applicability of finality requirements to ESA claims flatly miss, and are simply irrelevant to, the precise issue central to this case of whether establishment of the challenged TSSs constituted "agency action" of the Coast Guard. As demonstrated on summary judgment after full briefing by all sides, the TSSs were established by the IMO. Thus, establishment of the challenged TSSs did not constitute "agency action" within the APA's scope and standard of review and thus are non-reviewable under Plaintiffs' ESA citizen suit claim.

C.  Because The Court Correctly Decided the Case, It Need Not Address Plaintiffs' Alternative Arguments.

Unsuccessful on their theory that the Coast Guard had established the challenged TSSs, Plaintiffs now argue that a variety of Coast Guard activities, from a PARS study to ministerial codification of TSSs or even more ministerial "Local Notices to Mariners" are the "agency action" upon which the Coast Guard is required to consult. However, the Court ruled against Plaintiffs based on the allegations set forth in their complaint. Defenders of Wildlife, 2007 WL 1004242, at *9 (citing allegations in complaint and finding that such allegations are at odds with evidence in the administrative record demonstrating that the TSSs at issue were created by the IMO, not the Coast Guard). The Court should affirm this judgment and ignore Plaintiffs' belated attempt to find "agency action" in some other activity of the Coast Guard.

For instance, Plaintiffs argue that the Coast Guard must consult on the TSSs because they

8

were established "in part" by the Coast Guard. See Pls' Mt. at 16 (arguing that for the Cape Fear, Ches. Bay, Delaware Bay, Boston and Buzzards Bay TSSs, the Coast Guard prepared PARS and "concededly proposed specific routing measures that were considered by the IMO"). As an initial matter, this statement is a blatant mischaracterization of Defendants' Supplemental Statement of Facts, which nowhere concedes that the Coast Guard proposed specific routing measures for the IMO's consideration, but correctly identifies all relevant proposals to the IMO as proposals by the United States government. See e.g., CG Suppl. AR Doc. 19 (1990 "Note by the Government of the United States" proposing amendment of the existing TSS in the approach to Chesapeake Bay.). As the only other Coast Guard involvement mentioned was a Port Access Route Study ("PARS"), Plaintiffs now seem to be shifting their legal theory to allege that a Coast Guard PARS alone is an "agency action" within Section 7, because it is a precursor to the United States government's development of a proposal to the IMO, and therefore the Coast Guard has "carried out...in part" the establishment or modification of a TSS. The issue of whether the Coast Guard must consult on a PARS alone was already briefed, see Defs.' Mem. at 38-39, and Plaintiffs did not seriously contest NMFS' conclusion that a PARS is not an "agency action" for the purpose of ESA Section 7. Pls.' Br. at 35, n. 16. Plaintiffs cannot change their legal strategy at this point.

Likewise, Plaintiffs now revisit their alternative theory that codification of the TSSs in the Code of Federal Regulations is the applicable 'agency action' upon which the Coast Guard must consult. Plaintiffs previously raised this argument, see Pls.' Reply at 26, and the Court correctly stated that "[i]t is apparent that at most, the Coast Guard engages in the purely ministerial task of codifying some (but not all) of the IMO-designated TSSs for publication in the Code of Federal Regulations, after their adoption by the IMO." Defenders of Wildlife, 2007 WL 1004242 at *9. The

9

Court correctly determined that this ministerial codification does not alter the fact that Plaintiffs' alleged injury stems from actions of the IMO, not the Coast Guard.[6/]  Lastly, this Court should reject Plaintiffs' new theory that "Local Notices to Mariners," which merely report changes in aids to navigation and other relevant information pertaining to a particular waterway, is an "agency action" within ESA Section 7.

The Court correctly ruled on Plaintiffs' claim as presented.  Plaintiffs should not now be permitted to reargue and expand their case to challenge additional Coast Guard activities, because Rule 59(e) is not a vehicle to advance theories that could have been previously argued.  Kattan, 995 F.2d at 276.

D.  <u>The Court Has Ruled on Plaintiffs' Claim As Presented - Plaintiffs' Shifting Legal Theory Does Not Justify Further Supplementation of the Administrative Record or Discovery</u>.

As discussed above, after having these claims dismissed, Plaintiffs now seek to shift their legal challenge to various preliminary Coast Guard activities such as a PARS, or ministerial activities which occur after the establishment of a TSS, such as Local Notices to Mariners or documents relating to codification of TSSs.  In order to garner support shifting legal theory, Plaintiffs argue that this Court should require the Coast Guard to file a "complete" administrative record, and then allow Plaintiffs to brief entirely new arguments concerning whether such activities would be "agency action" within the meaning of ESA Section 7.  However, the Coast Guard stands behind the completeness of the current administrative record, which supports the actions challenged in Plaintiffs' Amended Complaint.  Plaintiffs now seek documentation of basically all ongoing Coast

---

[6/] As previously argued, a TSS is not the legal cause of Plaintiffs' alleged injury, as it only serves to separate traffic already present in a port, and the usage of a TSS is entirely discretionary with the vessel master.

Guard activities concerning management of vessel traffic over the entire Eastern seaboard. Because this Court correctly determined that it could rule on Plaintiffs' claim based on the current administrative record, the Coast Guard urges the Court to refuse Plaintiffs' attempt to relitigate this case with a "new" administrative record.

In addition to critiquing the completeness of the current record, Plaintiffs also critique the completeness of Defendants' Supplemental Statement of Facts, and supplemental administrative record documents, provided to the Court at its request. Despite Plaintiffs' dispersions, the Coast Guard provided information specifically responsive to the Court's attempt to clarify what entity actually established the challenged TSSs. See Defenders of Wildlife, 2007 WL 1004242 at *9 (noting that Defendants' Supplemental Statement of Material Facts and chart was submitted in response to the Court's request at the oral argument); see Tr. at 70 ("as to whether it's the IMO or whether it's the Coast Guard in the history of these seven or eight TSS's"); id. ("Is it the Coast Guard or is it the IMO?"). Earlier exchanges in the oral argument clarify that the Court was looking for information on what body or agency promulgated each TSS. See Tr. at 56-58; id. at 56, lines 18-20. This is what the Coast Guard provided in its Supplemental Statement of Facts, and supporting documents. Plaintiffs cannot use the fact that the Coast Guard provided more documents to aid the Court's inquiry, at its own request, as an opening to engage in a fishing expedition to find documents to support a new legal theory.

In the alternative, Plaintiffs renew their request to seek discovery pursuant to Fed.R.Civ.P. 56(f), which provides that a court may deny a motion for summary judgment or order continuance to permit discovery where the opposing party "cannot for reasons stated present by affidavit facts essential to justify the party's opposition. . . ." Fed. R. Civ. P. 56(f). Plaintiffs' Rule 56(f) requests

11

sought additional documents pertaining to the IMO process, and were seemingly advanced more as a litigation strategy than a serious request that the Court stay the summary judgment proceedings. See Pls.' Reply at 20 (urging Court to grant summary judgment in their favor, but alleging that they are entitled to discovery if the Court were to rule for the government).

By ruling on the pending cross-motions for summary judgment without granting Plaintiffs' Rule 56(f) request, the Court correctly determined that there were no material facts in dispute and that the case was appropriate for disposition at the summary judgment stage because the administrative record, and the supplemental administrative documents, contain sufficient evidence to address the issues raised by Plaintiffs in their Rule 56(f) affidavit. This determination is well within the Court's discretion, and there was no clear error in denying this request. See Novecon Ltd. v. Bulgarian-American Enter. Fund, 190 F.3d 556, 570 (D.C. Cir.1999) (refusal to grant Rule 56(f) request reviewed pursuant to the abuse of discretion standard).

## CONCLUSION

Plaintiffs have failed to meet their burden of showing that there is some intervening change of controlling law, new evidence, or any need to correct a clear error or prevent manifest injustice. For the foregoing reasons, Federal Defendants respectfully request the Court to deny Plaintiffs' Motion to Alter or Amend the Judgment.

Respectfully submitted this 10th day of May, 2007.

       MATTHEW J. McKEOWN
       Acting Assistant Attorney General
       United States Department of Justice
       Environment and Natural Resources Division

       JEAN E. WILLIAMS, Chief

        LISA L. RUSSELL, Assistant Chief

          /s/ *Bridget Kennedy McNeil*
        BRIDGET KENNEDY McNEIL, Trial Attorney
        Wildlife and Marine Resources Section
        Ben Franklin Station, P.O. Box 7369
        Washington, D.C. 20044-7369
        Tel: (202) 305-0388/ Fax: (202)305-0275
        bridget.mcneil@usdoj.gov

        Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2007, I electronically filed the foregoing Opposition to Plaintiffs' Motion to Alter or Amend the Judgment with the Clerk of Court using the ECF/CM system, which will generate an electronic Notice of Filing on:

**Howard M. Crystal**
howardcrystal@meyerglitz.com

**Eric Robert Glitzenstein**
eric@meyerglitz.com

Pursuant to the Court's mailing information for this case, listed on the ECF system, no parties require manual noticing.


                                                            _Bridget Kennedy McNeil_____