UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
Defenders of Wildlife, et al.,              )
                                            )
            Plaintiffs,                      )          No.  05-2191 (PLF)
                                            )
     v.                                      )
                                            )
Carlos Gutierrez, et al.,                    )
                                            )
            Defendants.                      )
_____)

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**

**Introduction**

The Coast Guard claims that plaintiffs are either rehashing arguments this Court has already rejected, or are presenting new arguments that the Court should not hear on reconsideration.  See Opp. to Plfs. Mot. to Alter or Amend Jud. ("Def. Opp.") (May 10, 2007) at 4.  In reality, plaintiffs have identified a legal concern with the Court's ruling that is clearly appropriate for review on a motion for reconsideration, because it has not been the focus of prior briefing by defendants, but is important to the Court's disposition of the case.  Thus, defendants do not – and cannot – dispute that, if the Coast Guard's threshold duty under Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., to at least *consider* the effects of its activities on the critically imperiled North Atlantic right whale is triggered not by some "*final* agency action," but rather by "*any action* authorized, funded, or carried out" by the agency, 16 U.S.C. § 1536(a)(2) (emphasis added), then the Court must consider, in the first instance, whether the agency's activities related to the establishment, and implementation, of the Traffic Separation Schemes ("TSSs") in right whale habitat constitute such "action" – which includes "*all activities*

*or programs of any kind* authorized, funded, or carried out, in whole or in part" by the agency. 50 C.F.R. § 402.02 (emphasis added).

Moreover, although plaintiffs certainly appreciate that reconsideration is appropriate only in unusual cases, the significant legal and practical consequences of the Court's ruling counsel strongly in favor of the relief requested here. As a legal matter, contrary to defendants' suggestion, there is not another existing precedent for the proposition that the ESA Section 7 mandate to protect against jeopardizing species only applies to "final" agency action. And as a practical matter, such an interpretation would mean that broad categories of agency action would no longer be subject to the consultation requirements, because they do not fit within the Administrative Procedure Act's ("APA") "final agency action" rubric.

Instead, applying the correct legal standard, under which the Coast Guard must consult over "*any* action authorized, funded, or carried out" by the agency, 16 U.S.C. § 1536(a)(2) (emphasis added), the Court should order the Coast Guard to comply with its Section 7 obligations in connection with the TSSs in right whale habitat, in light of the agency's undisputed, significant involvement in the development and implementation of these schemes, and irrespective of where "final" TSS decisions are made. See New York v. EPA, 443 F.3d 880, 885 (D.C. Cir. 2006) (explaining the "expansive meaning" of the term "any"). Alternatively, the Court should require the compilation of a complete Administrative Record ("AR") before considering whether the agency's role – including, for example, notice and comment rulemaking on TSSs in the Code of Federal Regulations (a matter over which the agency undisputably has "discretionary [ ] involvement or control," 50 C.F.R. § 402.03) – gives rise to any obligations under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

**Argument**

1.      Contrary to defendants' claim, plaintiffs' argument that the Coast Guard has Section 7

obligations for activities other than the final establishment of TSSs is not a "change [in] legal

strategy."  Def. Opp. at 8-9.  To the contrary, plaintiffs' Amended Complaint specifically

identified the Coast Guard's failure to consult with respect to not only final TSSs, but also Port

Access Routing Studies ("PARS") and "other regulatory mechanisms,"  Am. Cmplt.,

¶ 66, and also specifically discussed the agency's "Notice to Mariners," with which the Coast

Guard implements TSSs in U.S. coastal waters.  Id. ¶ 67.  Moreover, plaintiffs' claim broadly

challenged the Coast Guard's failure to undertake Section 7 consultation with respect to

"activities undertaken and authorized by the Coast Guard which may affect North Atlantic right

whales," id. ¶ 79, rather than specifically challenging that failure with respect to the final

establishment of TSSs, as the Coast Guard now claims.  Def. Opp. at 8.

        To be sure, in briefing this case on summary judgment, plaintiffs certainly emphasized their

legal theory – based on the plain terms of the Ports and Waterways Safety Act ("PWSA"), 33

U.S.C. § 1221, et seq. – that the Coast Guard has Section 7 obligations simply because the

agency has the authority to establish TSSs; has codified several of them through notice and

comment rulemaking; and these TSSs "may affect" right whales.[1]  Indeed, plaintiffs continue to

adhere to this position, but are not pressing it on reconsideration because they recognize that the

Court has taken a different view.

--------

        [1]      While defendants continue to argue that TSSs do not impact right whales, Def.
Opp. at 10, n.6, the existing AR indisputably establishes that they do.  See, e.g., CG AR 1086
("extensive research [demonstrates] the need for amending the TSS to help protect the right
whale from collisions with ships").

However, plaintiffs also explained, in their summary judgment briefing and at the summary judgment hearing, that even if the Court were to conclude that the TSSs are ultimately "established" by the International Maritime Organization ("IMO"), the Coast Guard is still engaged in sufficient "agency action" (as broadly defined in the ESA and its implementing regulations) associated with these TSSs to trigger both the letter and purpose of Section 7 – which, once again, is designed to "insure" that a federal agency does what *it* can reasonably do to insure that the continued existence of an endangered species is not jeopardized or its critical habitat adversely modified or destroyed as a result of the agency's activities and programs. Pl. Sum. Jud. Reply at 16-17; Transcript of Mar. 16, 2007 hearing ("Tr.") at 26-28; see also Lane County Audubon Soc. v. Jamison, 958 F.2d 290, 294 (9th Cir. 1992) (finding a management guideline to be "agency action" subject to Section 7 consultation requirements).

Defendants do not dispute that the Court has not ruled on these alternative arguments. Accordingly, if the Court agrees with plaintiffs that it should consider whether there is "any action authorized, funded, or carried out" by the Coast Guard requiring Section 7 consultation, 16 U.S.C. § 1536(a)(2), then plainly the Court should look to whether the agency's activities leading up to, proposing, and implementing TSSs give rise to Section 7 obligations, such that the impacts of the TSSs on the desperately imperiled right whale can at least be taken into account and mitigated – particularly given the overarching mandate of the ESA "to halt and reverse the trend toward species extinction, *whatever the cost*," Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 699 (1995) (internal quotations omitted) (emphasis added), and the Supreme Court's long-standing recognition that the Section 7 process is critical to carrying out this mandate. See TVA v. Hill, 437 U.S. 153 (1978).

4

Once again, all that plaintiffs are seeking is to have the Coast Guard *consult* with the National Marine Fisheries Service ("NMFS") in evaluating the adverse affects of the Coast Guard's *own* activities on right whales, in order to insure that the agency is not jeopardizing the species' continued existence, or adversely modifying its critical habitat. 16 U.S.C. § 1536(a)(2). If, as a result of that process, the Coast Guard concludes that one or more of the TSSs should be moved to protect right whales, as has already occurred in Boston, the agency plainly has the *ability* to take steps – either pursuant to the PWSA, or by urging the IMO to make changes – to protect right whales from one of the leading threats to the species' continued existence. Accordingly, because this process could indeed be critical to protecting the species from extinction, plaintiffs respectfully urge the Court to apply its reconsideration analysis in light of this overriding public interest ultimately at stake here. See Galvin v. Eli Lilly and Co., No. 03-1797, 2005 WL 3272142, at *1 (D.D.C. Sept. 12, 2005)("In considering the propriety of a Rule 59(e) motion, the Court possesses sufficient discretion to prevent injustice or unfairness").

2.    As for defendants' argument – presented for the first time in this opposition brief – that a plaintiff may only challenge an agency's failure to engage in Section 7 consultation with respect to a "final agency action," rather than "any action authorized, funded, or carried out by" the agency, 16 U.S.C. § 1536(a)(2), what is most striking is the Coast Guard's failure to at all address either the statutory language at issue, or the Supreme Court's ruling in Bennett v. Spear, 520 U.S. 154, 173-74 (1997), which simply foreclosed any argument that "final agency action" is necessary to pursue an ESA Citizen Suit claim. As plaintiffs have explained, in Bennett the Supreme Court specifically held that, although Section 1540(g)(1)(A) of the ESA does *not* encompass claims against the FWS or NMFS for "maladministration" of the ESA, claims against *other* agencies –

such as the Coast Guard – for violations of the ESA *may* be brought directly under that Section,

520 U.S. at 173-74 ("explaining that this provision permits suit "against regulated parties – both

private entities and *government agencies*") (emphasis added).  Critically, the Court further

explained that such a Citizen Suit claim – against an agency or a private party – may arise from

"[a]ny procedural default, *even one that ha[s] not yet resulted in a final disposition of the matter*

*at issue . . . ."*  Id. at 174 (emphasis added).  Therefore, given the plain language of Section

7(a)(2), which covers "*any* action authorized, funded, or carried out" by the Coast Guard, 16

U.S.C. § 1536(a)(2) (emphasis added), and the Supreme Court's unequivocal statement in

Bennett that claims brought against agencies and private parties under 16 U.S.C. § 1540(g)(1)(A)

do *not* have a "final agency action" requirement, 520 U.S. at 173-74, this Court erred in requiring

plaintiffs to identify a Coast Guard "final agency action" in order to prevail on their claim against

the agency.  See Pl. Mem. in Support of Mot. For Reconsid. ("Pl. Mem.") (Apr. 26, 2007) at 10-

15.

       Instead of addressing these dispositive points, defendants try to argue that there is some

split of authorities on this issue.  Def. Opp. at 5-7.  However, a review of the cases defendants

cite reveals that, in fact, they are not inconsistent with the Ninth Circuit's ruling in Washington

Toxics Coalition v. EPA ("WTC"), 413 F.3d 1024, 1034 (9th Cir. 2005), cert. denied 126 S. Ct.

1024 (2006) – which specifically found that a Citizen Suit claim under ESA Section 7 is not

subject to the APA's "final agency action" requirement, and which the Supreme Court declined to

review.  Indeed, while defendants cavalierly assert that "the D.C. Circuit has long held that the

APA's finality requirements apply equally to cases where judicial review is provided under

another statute," this proposition is not even supported by the single case defendants cite.  Def.

Opp. at 6, citing Carter/Mondale Pres. Comm. Inc. v. FEC ("Carter/Mondale"), 711 F.2d 279,

285 n.9 (D.C. Cir. 1983).  To the contrary, in Carter/Mondale the Court considered a judicial

review provision in the Presidential Election Campaign Act, 26 U.S.C. § 9001, et seq., that

*expressly incorporated all APA requirements.*  Id. at § 9041(b) ("The provisions of chapter 7 of

title 5, United States Code [i.e., the APA], apply to judicial review of any agency action . . ..").

Thus, as in National Ass'n of Homebuilders v. Norton, 415 F.3d 8, 13 (D.C. Cir. 2005), the

Court simply explained that, where judicial review *is* expressly subject to APA requirements and

limitations, a reviewing court only has jurisdiction to review "final agency action."

Cater/Mondale, 711 F.2d at 284.  At least in the ESA context, once again, extending that ruling

to claims that do not involve APA requirements would be impossible to reconcile with Bennett.[2]

      Defendants' argument that the Tenth Circuit is "directly in conflict" with the Ninth

Circuit's ruling in WTC is also off the mark.  Def. Opp. at 7, citing Gordon v. Norton, 322 F.3d

1213, 1219-22 (10th Cir. 2003).  In Gordon, the plaintiff was challenging the Fish and Wildlife

Service's ("FWS") *implementation of the ESA* in failing to control depradating wolves in the

---

[2]      The Carter/Mondale footnote referenced by defendants, Def. Opp. at 6, does state that the first phrase of APA Section 704, which refers to agency action "made reviewable by statute," 5 U.S.C. § 704, also incorporates a "final action" requirement.  Carter/Mondale, 711 F.2d at 285 n.9.  However, that point is irrelevant here since plaintiffs' claim is presented directly under the ESA Citizen Suit provision – which permits direct review against any "agency . . . who is alleged to be in violation" of any ESA requirement, § 1540(g)(1)(A) – and not APA Section 704.  Moreover, in Lujan v. Natl. Wildlife Fed'n, the Supreme Court explained that "final" agency action is only necessary where there is *no specific review authorized by statute*.  497 U.S. 871, 882 (1990)  ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action'").  Indeed, the Court in Lujan recognized that Congress may "explicitly provide[ ] for our correction of the administrative process at a higher level of generality" than "final agency action."  Id. at 894; see also, e.g., Department of Energy v. Ohio, 503 U.S. 607 (1992) (discussing permissibility of a claim against an agency for discharge of a pollutant, under a citizen suit provision authorizing suit for "any violation" of the statute).

manner the plaintiff alleged was required by a FWS regulation. 322 F.3d at 1219-1220. Thus, since such a maladministration claim may not be presented under the ESA Citizen Suit provision, it was entirely consistent with <u>WTC</u> – and, more importantly, <u>Bennett</u> – for the Tenth Circuit to have required a "final agency action" before reviewing the FWS's alleged failure to comply with this ESA regulation. By contrast, since the claim against the Coast Guard *is*, under <u>Bennett</u>, a claim properly within the ESA Citizen Suit provision (16 U.S.C. §1540(g)(1)(A)), both <u>Bennett</u> and <u>WTC</u> stand for the opposite proposition here.

In several cases courts have concluded that the plaintiffs were not challenging any discernable "agency action." Def. Opp. at 6-7, citing <u>National Wildlife Fed'n v. Caldera</u>, No. 00-1031, 2002 WL 628649 (D.D.C. Mar. 26, 2002); <u>Center for Food Safety v. Johanns</u>, 451 F. Supp. 2d 1165 (D. Haw. 2006). However, here, where plaintiffs are challenging the Coast Guard's actions related to several specific TSSs, there is no such concern. In short, even assuming *arguendo* that the Coast Guard does not make the "final" decision regarding the location of each TSS, the agency's intimate involvement in all stages of the process – from preparation of the PARS; to participation in the Shipping Coordination Committee; to leading the delegations to the IMO, <u>see</u> Def. Sum. Jud. Mem. at 10[3]; to notifying mariners of the new lanes – nonetheless triggers Section 7.[4]

---

[3]      According to the Coast Guard itself, the agency is "*the lead U.S. representative to the International Maritime Organization*," and thus it certainly plays a critical role in the finalization of TSSs off the United States coastline. U.S. Coast Guard, Maritime Safety (posted at http://www.uscg.mil/top/missions/M_Safety.asp) (last visited May 21, 2007) (emphasis added).

[4]      Of course, other jurisdictional requirements – <u>e.g.</u>, ripeness, standing – might still preclude judicial review of agency action before it has taken some concrete form. However, those doctrines are also inapplicable here, where there is no dispute that each of the challenged TSSs

(continued...)

Moreover, as plaintiffs have also explained, <u>see</u> Pl. Mem. at 17-20, at bare minimum, the

Coast Guard's rulemaking process – and promulgation of regulations – for several of the TSSs

are plainly "agency action," which expressly includes "the promulgation of regulations."  50

C.F.R. § 402.02.  Indeed, in light of the agency's express assertions in promulgating these

regulations that it was acting under the PWSA, and that, accordingly, it might make changes to

the TSS as a result of the rulemaking, <u>see</u> Pl. Mem. at 17-18, these TSSs are reviewable under

even the restrictive legal standard the Court has applied thus far.

       3.      With regard to plaintiffs' request that the Court at least require the filing of a

complete AR, or permit some limited discovery, before concluding that the agency is not engaged

in *any* activities associated with these TSSs that give rise to Section 7 duties, defendants'

threshold argument that plaintiffs had made no "serious request" for a complete Record before

seeking reconsideration is erroneous. Def. Opp. at 12.  In its Rule 56(f) declaration (Pl. Ex. 34);

during the oral argument (Tr. 71-72); and in its post-hearing Notice (Pl. Notice of Filing, n.1)

(Mar. 23, 2007), plaintiffs repeatedly raised concerns not only about the adequacy of the Record

here, but also with the Coast Guard's failure to provide the Court with the complete Record

concerning *its* participation in the TSSs in right whale habitat, rather than the activities of the

IMO.

       To be sure, the argument was not central to plaintiffs' presentation because, in plaintiffs'

view, the final TSSs must, by Congressional directive, be an action of the Coast Guard,

irrespective of the IMO's role.  However, now that the Court has rejected that argument, but has

---

    [4](...continued)

exist.  <u>See</u> Pl. Sum. Jud. Reply at 34-38.

not yet addressed plaintiffs' separate argument that the Coast Guard must consult over the "agency actions" that the Coast Guard *did* engage in, the Court certainly should also consider whether the Record is adequate to address this contention.

Moreover, plaintiffs did *not*, as the Coast Guard now suggests, concede that agency activities prior to finalization of a TSS are not subject to consultation. Def. Mem. at 9. While plaintiffs acknowledged that *NMFS* had concurred that a PARS itself is not subject to consultation, NMFS also explained that if the agency "proposed to . . . carry our study recommendations, that proposal may" require consultation. Pl. Sum. Jud. Mem. at 35 n.16 (quoting CG AR 992). Therefore, because, to date, the agency has not produced the AR concerning its proposals to carry out the recommendations contained in the PARS, those records should at least be produced before the Court concludes that the agency has no Section 7 duties in connection with these TSSs, i.e., that there is *no* "action authorized, funded, or carried out" by the Coast Guard, 16 U.S.C. § 1536(a)(2), that has the potential to adversely affect right whales, and hence should at least be the subject of a consultation with NMFS.

At bottom, rather than comply with the mandate of Section 7 of the ESA to insure that "any" agency activities are not jeopardizing species, 16 U.S.C. § 1536(a)(2), the Coast Guard is asking the Court to insure that the agency is absolved of any responsibility to protect the right whale from the serious adverse impacts associated with the TSSs in right whale habitat – despite the agency's undisputed, intimate involvement in both the formation and implementation of these sea lanes. Plaintiffs respectfully urge, in light of the overarching purpose of Section 7 to compel all agencies to adopt a policy of "institutionalized caution" where listed species are concerned, Hill, 437 U.S. at 194, that the Court exercise its discretion to grant plaintiffs' motion for

reconsideration, and either require the Coast Guard to fulfill its Section 7 obligations in connection with these TSSs, or, at minimum, require the compilation of a complete Record before finally determining whether the agency can prepare PARS; make proposals to the IMO; play the lead role in the TSS discussions at the IMO; and implement the TSSs in U.S. coastal waters, while altogether avoiding compliance with Section 7 of the ESA. 16 U.S.C. § 1536(a)(2).

## Conclusion

For the foregoing reasons, plaintiffs respectfully request that the Court grant their motion for reconsideration.

Respectfully submitted,

Of Counsel:

_____/s/_____

Howard M. Crystal (D.C. Bar No. 446189)

Michael P. Senatore (D.C. Bar No. 453116)     Eric R. Glitzenstein (D.C. Bar No. 358287)
Andrew Hawley (Cal. Bar No. 229274)          Meyer Glitzenstein & Crystal
Defenders of Wildlife                        1601 Connecticut Ave., N.W., Suite 700
1130 Seventeenth Street, N.W.                Washington, D.C. 20009
Washington, D.C. 20036                       (202) 588-5206

May 21, 2007                                 Attorneys for Plaintiffs

11